In the
United States Court of Appeals
For the Seventh Circuit

Nos. 97-3982 & 98-2195

SANDRA L. RICE,

Plaintiff-Appellee,

v.

SUNRISE EXPRESS, INCORPORATED,
GAINEY CORPORATION and SUNRISE U.S.A.,
INCORPORATED,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Indiana.
No. 96 C 447--William C. Lee, Chief Judge.
Roger B. Cosbey, Magistrate Judge.

Argued May 17, 1999--Decided April 7, 2000

Before EASTERBROOK, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.  Sandra Rice brought an action against Sunrise Express, Inc. ("Sunrise Express") for violating the Family Medical Leave Act ("FMLA" or "the Act") after Sunrise Express terminated her upon her return from a medical leave. Sunrise Express argued that Ms. Rice would have been terminated even if she had not taken leave, and, thus, the company had not violated the Act. The jury returned a verdict for Ms. Rice.

On appeal, Sunrise Express first asserts that the district court erroneously placed the burden of proof on Sunrise Express to prove that it had a legitimate business reason for her termination. Sunrise Express' second argument is that insufficient evidence exists to find a violation of the FMLA. For the reasons set forth in more detail in the following opinion, we hold that the district court improperly placed the burden of proof on Sunrise Express. Therefore, we reverse the judgment of the district court and remand the case to the district court for proceedings consistent with this opinion.

I

BACKGROUND

A. Facts

In 1994, Sunrise Express, a trucking company, hired Sandra Rice as a payroll billing clerk. When Sunrise Express hired Ms. Rice, it already employed two other payroll billing clerks. Both of these other employees left the company by early 1995. Thereafter, Sunrise Express hired Christy Huntington to replace the departing employees.

In 1995, the owners of Sunrise Express sold the company to Gainey Corporation ("Gainey"), and later, in 1997, Sunrise Express was merged into Sunrise U.S.A., Inc. ("Sunrise USA"). Due to the sale of Sunrise Express, the company reorganized its office, computerized its payables and receivables, and upgraded its computer system. Sunrise Express asserts that this upgrade, completed by November 1995, drastically increased the speed of data entry, the main responsibility of payroll billing clerks. Consequently, the workload of these individuals also was reduced drastically. The company further claims that it restructured the duties of several employees so that the manager of the payroll billing clerks assumed some of their tangential duties. Meanwhile, the company began to experience a decrease in its freight business. Sunrise Express argues that all of these factors led to its decision to terminate one of its payroll billing clerks.

Ms. Rice began working for Sunrise Express in January 1994; she had 6 to 12 months experience in the trucking industry and 8 to 10 years experience as a payroll/billing clerk. She never had received a written evaluation of her work, and she never had been disciplined, reprimanded, or verbally warned. Employees of Sunrise Express, including one of its owners, testified that she performed satisfactorily and that they had no problems with her work.

In mid-January 1996, Ms. Rice injured a toe on her right foot and experienced both swelling and infection. Her physician admitted her to the hospital and placed her on antibiotics. She remained in the hospital for one week and then returned home for a second week. Her physician then authorized her to work half-days, which she did for one more week. At the end of the week, however, the physician informed her that her toe had to be amputated. Ms. Rice underwent surgery on February 14 and remained on leave from work for 4 more weeks before her doctor released her to return to work beginning on March 11.

On March 5, Ms. Rice informed Sunrise Express that she would be returning to work on March 11; however, on March 7 she was informed that she was being laid-off beginning March 11. According to Sunrise Express, her lay-off stemmed from the decrease in freight and the ability of other employees to complete the work without her. Sunrise Express claimed that Ms. Rice was chosen for the lay-off over Ms. Huntington because the latter had a better work ethic and because Ms. Rice wasted time taking smoke breaks, playing computer games, and talking on the telephone.

Ms. Rice claims, however, that Betty Keiser, the owner of Sunrise Express, told her that the reason for her lay-off was because she was "already off." Tr.V at 60. The plaintiff also states that others in Sunrise Express management told her that the decision to terminate her was made months before her medical leave. Sunrise Express offered the personal circumstances of Ms. Rice as its reason for not terminating her before her FMLA leave. Sunrise Express states that it chose January 1 as the target date for Ms. Rice's lay-off because the company did not wish to dismiss an employee during the holiday season. Around the target date, Ms. Rice's family experienced the death of a member and also suffered other health and financial problems. Therefore, Sunrise Express claims, it decided to delay her lay-off a "short time" and within that "short time" she went on FMLA leave.

Ms. Rice sued Sunrise Express for violating 29 U.S.C. sec. 2614(a)(1) for failing to reinstate her to her previous position at the end of a qualified medical leave./1 She thereafter amended her complaint to add Sunrise USA and Gainey as defendants. The district court denied the defendants' joint motion for summary judgment and Ms. Rice's cross-motion for partial summary judgment.

B. Procedural History

On September 17, 1997, the district court conducted a final pre-trial conference. At that meeting, the court raised the issue of whether Gainey was liable as a successor corporation or as a joint employee of Sunrise Express. Defense counsel told the court that, as a practical matter, the issue of Gainey's liability was not material to the outcome of the case or to the viability of any judgment that Ms. Rice might obtain. The parties explained that they had stipulated that Sunrise USA was the successor corporation of Sunrise Express following their merger and, therefore, would be liable for any

judgment rendered against Sunrise Express. Satisfied that Sunrise USA had ample resources to pay any judgment that might be rendered in favor of Ms. Rice, the district court suggested that the parties enter into a stipulation to that effect and "simply hold in abeyance any determination of successor liability by Gainey Corporation until such time as it may become material." Tr.I at 5. Both counsel agreed that this course of action was acceptable, and the court stated that they could "get the issue out of the case for the time being, and perhaps not have to deal with it at all." Tr.I at 6./2 No formal order was entered severing the successor liability claim against Gainey or dismissing Gainey without prejudice. The case proceeded to trial only against Sunrise Express and its successor, Sunrise USA. Indeed, the Agreed Statement of the Case identified the defendants at trial as Sunrise Express, Inc. and Sunrise USA, Inc. There was no mention of Gainey.

Several weeks later, the district court raised the possibility of referring this case to a magistrate judge for trial because the district judge's own calendar was running somewhat behind. Counsel for the defense later filed a written consent on behalf of Sunrise Express, Inc./3 No consent was sought from Gainey, even though the same counsel represented both Sunrise USA and Gainey.

The magistrate judge proceeded to conduct a two-day trial on October 22 & 23, 1997. Counsel appeared at trial on behalf of Sunrise Express and Sunrise USA. Throughout the course of trial, no indication was given that Gainey was missing from the trial.

At the conclusion of the two-day trial, the jury rendered a verdict in favor of Ms. Rice. The magistrate judge then entered an order and judgment in her favor and against Sunrise USA. The judgment order specifically indicated that the judgment was against Sunrise USA alone because the parties had stipulated that Sunrise USA was the "proper named defendant in this case." R.86 at 9./4 At no time did counsel for Sunrise USA object that the record lacked Gainey's consent to trial before the magistrate judge.

Sunrise USA appealed the judgment of the district court to this court. On December 16, 1997, we entered an order sua sponte requiring Sunrise USA, Sunrise Express, and Gainey to file a jurisdictional memorandum. In reply to that order, these corporations raised for the first time the argument that Gainey had not consented to trial by a magistrate judge and that such

consent was necessary for jurisdiction.

On January 30, 1998, Ms. Rice filed, in the district court, a motion for correction of record and entry of an order nunc pro tunc. The district court granted Ms. Rice's motion and directed the clerk of the district court to enter a notation in the record to show that the court had, on September 17, 1997, accepted the stipulation of the parties that Gainey was to be severed from the case./5 In issuing the order, the district court pointedly noted that it was taking the action in order to show what had been done previously, not to alter substantive rights:

As the transcript of the September 17, 1997 final pre-trial conference shows, this court determined that Sunrise USA was financially able to satisfy any judgment against it, and then obtained both counsel's agreement that determination of Gainey's liability would not be an issue at trial. Therefore Gainey was severed from the trial. Under Rule 21 of the Federal Rules of Civil Procedure, severance creates two separate actions where previously there was but one.

R.122 at 6.

II
DISCUSSION

A. Jurisdiction

The first issue that we must confront is the jurisdiction of this court and, by implication, the jurisdiction of the district court. Because federal courts are courts of limited jurisdiction, we must approach any question concerning the limits of our authority with great care and circumspection. At the same time, we must avoid hypertechnical characterizations of procedural matters that serve none of the policies that animate the jurisdictional statutes but instead produce judicial diseconomy and increase litigant expenses./6

The situation before us arises from the failure of the district court to account explicitly for the defendant Gainey. As the case originally came to this court, it appeared that Gainey had not consented to trial before a magistrate judge. Therefore, it appeared that the allegation with respect to it was still pending in the district court. If this situation were the case, there would be no final judgment in the action to provide this court with jurisdiction under 28 U.S.C. sec. 1291. Nor would the magistrate judge have been authorized to act as the district court./7 The district court attempted to clarify

this ambiguity by the entry of a nunc pro tunc order that recites that, at the final pretrial conference, the district court, acting pursuant to Rule 21 of the Federal Rules of Civil Procedure,/8 had severed Gainey and that the case proceeded only with respect to the other defendants./9

A district court may enter a nunc pro tunc order that clarifies a jurisdictional issue. In Local 1545, United Mine Workers of America v. Inland Steel Coal Co., 876 F.2d 1288 (7th Cir. 1989), this court encountered a situation analogous to the one at hand. On May 10, the district court, when entering judgment against the defendants, only listed the name of one of the two defendants. On June 23, this court issued sua sponte an order requiring the parties to submit memorandums on the jurisdictional issue of whether judgment had been entered as to all the parties because the second defendant's name was not on the final judgment. On June 28, the district court issued a nunc pro tunc order clarifying its earlier order and stating that the court had intended to include the second defendant in the May 10 judgment. In our later opinion, we discussed whether the original appeal was premature because it had been filed prior to the nunc pro tunc and thus prior to final judgment as to both of the defendants. We concluded that the appeal was timely because final judgment as to both the defendants had been entered on May 10.

When a district court has taken all the steps necessary for an action that affects jurisdiction, but imprecisely memorializes that action, the district court may issue a nunc pro tunc order to explain more precisely what took place. Given the Supreme Court's express direction in Banker's Trust Co. v. Mallis, 435 U.S. 381, 386-87 (1978), a decision regarding jurisdiction cannot turn on a rigid paper trail; rather, we must evaluate what actually occurred and determine whether the failure to memorialize adequately what in fact occurred misled or prejudiced any party.

When a United States District Judge states what occurred in his or her courtroom on a particular occasion, that statement is certainly worthy of our acceptance, unless the record demonstrates that the judge misapprehended the situation. A district court's credibility certainly is not dependent on the existence of a contemporaneous writing. As Judge Flaum, writing for a panel that also included Judges Posner and Kanne, has noted:

[a] written order is the best evidence of a judicial act. But in the absence of a statutory

provision requiring the entry of a written order, the judicial determination alone stands as the operative act of the court. Courts accomplish much of their business without formal memorialization.

United States v. Taylor, 841 F.2d 1300, 1308 (7th Cir.), cert. denied, 487 U.S. 1236 (1988).

The record demonstrates that the order entered by the district court is "nunc pro tunc" not only in form but in substance. The district court was well aware that it could not "rewrite history," but could only clarify what had taken place in its earlier proceedings. The district court acknowledged that it was simply memorializing the past, not changing the status of the parties. Moreover, the course of the proceedings at the pre-trial conference demonstrates that the district court intended a severance and that the parties understood the action as a severance. First, the district court stated that the parties should "simply hold in abeyance any determination of successor liability by Gainey Corporation until such time as it may become material." Both counsel agreed that this course of action was acceptable, and the court concluded that they could "get the issue out of the case for the time being, and perhaps not have to deal with it at all." Tr.I at 6. The court presumably knew that, if the trial was bifurcated pursuant to Rule 42, then the issue of Gainey's liability would still need to be determined at some point in order to obtain a final judgment. On the other hand, if the court severed the trial under Rule 21, then final judgment could be rendered as to Sunrise USA and Sunrise Express independent of Gainey's liability. Given the court's comment that they might not need to deal with Gainey's liability at all, the pre-trial conference demonstrates that the district court intended to sever Gainey as a party under Rule 21. The court's nunc pro tunc order clarified this former action.

The parties also understood the court's action as a severance. The record demonstrates that the parties did understand that the suit was proceeding only against Sunrise USA and Sunrise Express. In addition to the dialogue at the pre-trial conference, the parties, in their Agreed Statement of the Case, explained that the case was brought by Ms. Rice against the defendants Sunrise Express and Sunrise USA. No mention was made of Gainey. Also, in the Agreed Proposed Jury Instructions, the parties again stated that suit was brought against Sunrise Express and Sunrise USA and further clarified that Sunrise USA would be responsible for any verdict in favor of the plaintiff. No mention was made of Gainey. Finally, the jury instructions given by the

district court, without objection by the defendants, explained that Ms. Rice was seeking compensation from Sunrise Express and Sunrise USA. No mention was made of Gainey. Taken as a whole, the record demonstrates that the parties understood that Gainey had been severed from the suit.

The district court properly severed Gainey under Rule 21. It is within the district court's broad discretion whether to sever a claim under Rule 21. See Hebel v. Ebersole, 543 F.2d 14, 17 (7th Cir. 1976); see also United States v. O'Neil, 709 F.2d 361, 367 (5th Cir. 1983). Before making the severance, the district court does not need to determine the merit of the second claim. As long as there is a discrete and separate claim, the district court may exercise its discretion and sever it. Here, the district court effectively took Gainey, and the separately pled claim for successor liability against Gainey, out of the suit. The other parties already had stipulated that Sunrise USA would be liable in full for any judgment against Sunrise Express. Because Gainey did not face primary liability, and, in all likelihood, no liability at all, its presence was not necessary, and, in the view of the district court, its removal significantly simplified the case. Once that party and claim were taken out of the case, the district court validly entered final judgment as to the remaining parties and claims under Rule 58. We certainly cannot say that the district court's determination was "so transparently a confusion of Rule 21 with Rule 42(b), or an attempt to separate an essentially unitary problem," see Spencer, White & Prentis Inc v. Pfizer Inc., 498 F.2d 358, 362 (2d Cir. 1974), that the district court abused its discretion. See also Hebel, 543 F.2d at 17 (stating that a court's discretion in severing claims under Rule 21 may not be abused to separate an essentially unitary problem).

Because Gainey had been severed from the case, its consent to the magistrate judge's trying the remaining counts of the suit was not needed; the magistrate judge therefore was entitled to enter final judgment with respect to these counts. Accordingly, the district court had jurisdiction, and we have appellate jurisdiction.

B.  Burden of Proof and Jury Instructions

The district court instructed the jury that the defendants had the burden to establish that Ms. Rice would not have been retained even if she had not been on FMLA leave./10 For the reasons that follow, we have concluded that this instruction is not an accurate reflection of the statutory mandate. In analyzing this issue, we must focus

on the structure and the language of the statute. We begin with the structure.

In King v. Preferred Technical Group, 166 F.3d 887 (7th Cir. 1999), Judge Kanne explained, in some detail, the structure of the FMLA. He noted that the Act "establishes two categories of broad protections for employees." 166 F.3d at 891. First, in sec.sec. 2612-2615, the Act contains prescriptive protections for employees that are expressed as substantive statutory rights. As the Judge wrote in King:

The Act provides eligible employees of a covered employer the right to take unpaid leave for a period of up to twelve work weeks in any twelve-month period for a serious health condition as defined by the Act. 29 U.S.C. sec. 2612(a)(1). After the period of qualified leave expires, the employee is entitled to be reinstated to the former position or an equivalent one with the same benefits and terms of the employment that existed prior to the exercise of the leave. 29 U.S.C. sec. 2614(a). To insure the availability of these guarantees, the FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided. 29 U.S.C. sec. 2615(a)(1).

King, 166 F.3d at 891. When an employee alleges a deprivation of these substantive guarantees, the employee must demonstrate by a preponderance of the evidence only entitlement to the disputed leave. The issue of the employer's intent is immaterial. See King, 166 F.3d at 891.

In addition to these substantive prescriptive rights, the FMLA also "affords employees protection in the event they are discriminated against for exercising their rights under the Act." Id. Thus, the Act proscribes action by the employer to discriminate or to retaliate against an employee for the exercise of rights created by the Act. See id.; see also 29 U.S.C. sec. 2615(a)(2) & (b). These proscriptive provisions thus create a cause of action analogous to the actions for discrimination and for retaliation that are found in Title VII and the other discrimination statutes. As Judge Kanne explained in King:

In contrast to what an employee must show to establish a deprivation of a substantive guarantee under the Act, when an employee raises the issue of whether the employer discriminated against an employee by taking adverse action against the employee for having exercised an FMLA right, the question of intent is relevant. The issue becomes whether the employer's actions were

motivated by an impermissible retaliatory or discriminatory animus.

King, 166 F.3d at 891.

Ms. Rice claims that her employer, Sunrise Express, interfered with her rights under the FMLA. In order to make such a claim, however, she must, as an initial matter, demonstrate that she possessed a right under the Act. We therefore must turn to the prescriptive section that creates the right to reinstatement and focus on the wording of that section. Section 2614(a)(1) states:

Except as provided in subsection (b) of this section, any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave--

(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or

(B) to be restored by the employer to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. sec. 2614(a)(1). The same section later sets more precise contours on that right by placing limitations on that right. Section 2614(a)(3) explains:

Nothing in this section shall be construed to entitle any restored employee to--

(A) the accrual of any seniority or employment benefits during any period of leave; or

(B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.

29 U.S.C. sec. 2614(a)(3). In short, the employee is entitled to be reinstated to the same position held before the leave or to an equivalent position.

In King, and again in Diaz v. Fort Wayne Foundry Corp., 131 F.3d 711 (7th Cir. 1997), this court stated succinctly the burden of the plaintiff in establishing a cause of action under the prescriptive sections of the Act, including sec. 2614(a)(1) of the FMLA. The plaintiff must establish, by a preponderance of the evidence, that he is entitled to the benefit that he claims. See Diaz, 131 F.3d at 713. As we have

just pointed out, sec. 2614(a)(3) makes clear that the substantive right created by sec. 2614(a)(1) does not include an entitlement to any right, benefit, or condition to which the employee would not have been entitled if the leave had not been taken. We think that this latter provision, given its structural and semantical relationship to sec. 2614(a)(1), is best read as a rule of construction that affects the meaning of sec. 2614(a)(1) by excluding from the substantive right "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave." 29 U.S.C. sec. 2614(a)(3). When sec. 2614(a)(3) is read in this manner, the employee always bears the ultimate burden of establishing the right to the benefit. If the employer wishes to claim that the benefit would not have been available even if the employee had not taken leave, the employer must submit evidence to support that assertion. When that burden of going forward has been met, however, the employee must ultimately convince the trier of fact, by a preponderance of the evidence, that, despite the alternate characterization offered by the employer, the benefit is one that falls within the ambit of sec. 2614(a)(1); the benefit is one that the employee would have received if leave had not been taken. For instance, if the employer claims that the employee would have been discharged or that the employee's position would have been eliminated even if the employee had not taken the leave, the employee, in order to establish the entitlement protected by sec. 2614(a)(1), must, in the course of establishing the right, convince the trier of fact that the contrary evidence submitted by the employer is insufficient and that the employee would not have been discharged or his position would not have been eliminated if he had not taken FMLA leave.

   In its regulations implementing the Act, see 29 U.S.C. sec. 2654, the Department of Labor ("DOL") has stated:

An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment. . . . An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration.

29 C.F.R. sec. 825.216(a)(1). Read as a whole and in the context of the entire regulatory scheme, we think that this regulation is best understood not as the agency's understanding as to Congress' allocation of the ultimate burden of proof in the

litigation context, but as an explanation of the nature of the substantive right created by the statute. Similarly, the decision of our colleagues in the Eleventh Circuit in O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349 (11th Cir. 2000), does not state in any definitive fashion that the statutory text was intended to alter the normal allocation of burdens of proof at trial, but simply states that "when an 'eligible employee' who was on FMLA leave alleges her employer denied her FMLA right to reinstatement, the employer has an opportunity to demonstrate it would have discharged the employee even if she had not been on FMLA leave." O'Connor, 200 F.3d at 1354.

In this case, in which the evidence was fairly close, we cannot say that the district court's instruction misallocating the burden of proof did not make a difference in the final outcome of the case. Accordingly, we must remand the case to the district court for a new trial.

Conclusion

For the foregoing reasons, the jury verdict is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED


/1 29 U.S.C. sec. 2614(a)(1) states:

Except as provided in subsection (b) of this section, any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave--

(A)  to be restored by the employer to the position of employment held by the employee when the leave commenced . . . .

/2 The dialogue states in full:

THE COURT:  Well, one thing we might do, then, why don't we have a stipulation to that effect [Sunrise USA has ample resources to pay] and simply hold in abeyance any determination of a successor liability by Gainey Corporation until such time as it may become material.
MS. BROGAN:  [Ms. Rice's attorney]: Post judgment.
MR. KEEN:  So a stipulation that Sunrise U.S.A. would--
THE COURT:  Is the successor to Sunrise Express Inc. and would be liable for any judgment entered against Sunrise Express, Inc. and as far as you know, until you see the verdict, has the

resources to pay it.
MR. KEEN:  Okay.
THE COURT:  That way we can simply--
MS. BROGAN:  That's acceptable to us.
THE COURT:  --get the issue out of the case for the time being, and perhaps not have to deal with it at all.

Tr.I at 5-6.

/3 The district court construed this document as a consent by Sunrise USA because Sunrise Express no longer existed as a separate entity at the time of the consent.

/4 See also R.87 and R.88 which enter judgment and amended judgment "in favor of the Plaintiff Sandra L. Rice and against the Defendant Sunrise U.S.A., Inc."

/5 In the course of explaining what had occurred during the district court proceedings, the district court employed infelicitously the term "severed from the case for the purposes of trial." Read alone, this phrase might suggest that the court intended to retain the successor liability count against Gainey in the case but to hold it for trial at another time. Such a reading would be counter to the clear meaning of the document read as a whole. The court squarely said that it was severing the count against Gainey under Rule 21 and that such a severance "creates two separate actions where previously there was but one." R.122 at 6.

/6 In Bankers Trust Co. v. Mallis, 435 U.S. 381 (1978), the Court declared that a common sense interpretation of Rule 58, Fed. R. Civ. P., could be used because nonadherence to the technicalities did not mislead or prejudice the parties. Also, the Court stated that it would not avoid the merits of the action because of mere technicalities. See id. at 386-87; see also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 170-71 (1974) (stating that 28 U.S.C. sec. 1291 requires a practical rather than technical construction of finality); cf. Foman v. Davis, 371 U.S. 178, 181 (1962) (applying common sense interpretation to prior Rule 73 which dealt with notice of appeal when defect occurred in second notice of appeal and the defect did not mislead or prejudice the parties).

/7 This circuit has taken a strict view of the prerequisites for trial before a magistrate judge because the parties are giving up their constitutional right to trial before an Article III judge with life tenure and salary protection. See Williams v. General Elec. Capital Auto Lease, Inc., 159 F.3d 266, 268 (7th Cir. 1998), cert.

denied, 119 S. Ct. 2392 (1999). 28 U.S.C. sec. 636, which authorizes suit before a magistrate judge, requires (1) consent of the parties and (2) special designation by the district court. The statute states in pertinent part:

(1) Upon the consent of the parties, a full-time United States magistrate or a part-time United States magistrate who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves.

28 U.S.C. sec. 636(c). Although the required consent does not need to be in writing, it must be explicit and on the record. See Mark I, Inc. v. Gruber, 38 F.3d 369, 370 (7th Cir. 1994). Also, the consent must be unanimous. See Williams, 159 F.3d at 268; Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc., 53 F.3d 851, 851-52 (7th Cir. 1995); Mark I, Inc., 38 F.3d at 370.

In applying the above authority, if Gainey was still a party to the action and did not consent to trial before the magistrate judge, then the magistrate judge would not have had jurisdiction to enter a final judgment. If the magistrate judge did not have jurisdiction then this court would not have jurisdiction under sec. 1291 because no final judgment would have been entered. Because the record does not contain evidence of Gainey's consent, the question would remain whether Gainey was still a party in the litigation.

/8 Rule 21 reads as follows:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21. If the district court severed Gainey under Rule 21, then it created two separate actions, each capable of reaching final judgment and being appealed. If, however, Gainey was not severed or the district court merely bifurcated the parties under Rule 42, Fed. R. Civ. P., then no final judgment could be entered until final judgment was reached on all issues and parties. Rule 42 states:

(b) Separate Trials. The court, in furtherance

of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed. R. Civ. P. 42. The district court did not explicitly state "I sever Gainey under Rule 21;" however, this court does not require a formal order of severance if the evidence shows that the district court intended to sever the parties and the parties understood that severance had occurred. See Hebel v. Ebersole, 543 F.2d 14, 17 (7th Cir. 1976); accord United States v. O'Neil, 709 F.2d 361, 368 (5th Cir. 1983). As explained below, the district court did intend to sever Gainey from the actions and the parties were aware this had occurred.

/9 We believe that the district court was entitled to take the corrective action that it did take. If characterized as a correction of the record under Rule 10(e) of the Federal Rules of Appellate Procedure, the action could be taken without leave of this court. Rule 10(e) states:

   (1)  If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly.

   (2)  If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded:

   (A)  on stipulation of the parties;

   (B)  by the district court before or after the record has been forwarded; or

   (C)  by the court of appeals.

   (3)  All other questions as to the form and content of the record must be presented to the court of appeals.

Fed. R. App. P. 10. If, on the other hand, the district court's action was taken under Rule 60(a) of the Federal Rules of Civil Procedure, the permission of this court is a necessary prerequisite because the case is in the court of appeals. Rule 60 reads:

(a) Clerical Mistakes.  Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

Fed. R. Civ. P. 60. As Local 1545, United Mine Workers of America v. Inland Steel Coal Co., 876 F.2d 1288 (7th Cir. 1989), makes clear, however, the sua sponte order of this court inquiring about jurisdiction is sufficient authority for the district court to enter an order explaining the circumstances that cause the jurisdictional ambiguity. See id. at 1291 n.4.

/10 The relevant jury instruction states, in part, that "a defendant is entitled to seek to prove, by a preponderance of the evidence, that the employee would have been laid off during the period of her FMLA leave, even if she had not taken such leave." R.74 at 21.

   EVANS, Circuit Judge, dissenting.  I respectfully disagree with the majority's conclusion that Rice should have the burden of establishing that she would have been retained if she had not been on FMLA leave. While I am not saying this issue can only be sensibly resolved in one way, it seems to me that it's better resolved by requiring the employer to shoulder the burden.

   When a statute is not clear, we owe deference to the interpretation by an agency charged with enforcing it if that interpretation is "based on a permissible construction of the statute." Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 843 (1984). Quite naturally, this principle applies to regulations of the Department of Labor. See Thorson v. Gemini Inc., 2000 WL 236404 (8th Cir. 2000) (explicitly giving Chevron deference to the Department of Labor in its interpretation of "serious health condition" under the FMLA); and Price v. City of Fort Wayne, 117 F.3d 1022 (7th Cir. 1997) (relying on FMLA regulations to interpret the phrase "serious health condition" with no explicit discussion of Chevron principles). Section 2614(a)(3)(B) gives employers an exemption but it is silent, and therefore

unclear, as to who bears the burden of proof on the issue. Thus, the Department of Labor has promulgated regulations which state that an "employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration." 29 C.F.R. sec. 825.216(a)(1)(1997). Under this view, sec. 2614(a)(3)(B) creates an affirmative defense.

This agency interpretation of sec. 2614(a)(3)(B) is entirely reasonable. The FMLA provides a substantive right (a "statutory entitlement"), Diaz v. Fort Wayne Foundry Corp., 131 F.3d 711 (7th Cir. 1997), and an antidiscrimination component. Id.; King v. Preferred Technical Group, 166 F.3d 887 (7th Cir. 1999). The "statutory entitlement" provisions of the FMLA should be treated, we said in Diaz, similarly to those in the National Labor Relations Act, the Fair Labor Standards Act, and the Employee Retirement and Income Security Act. Under those Acts, a burden can be placed on employers to prove that a provision does not apply to them. See NLRB v. Transportation Management Corp., 462 U.S. 393 (1983); Corning Glass v. Brennan, 417 U.S. 188 (1974) (the Equal Pay Act); Sutton v. Engineered Systems, Inc., 598 F.2d 1134 (8th Cir. 1979) (the Fair Labor Standards Act).

On a practical level, it makes sense to require the employer to bear the burden of proof on this issue. The employer is in control of the evidence. Of course, one might say that the same is true in discrimination cases, and there, to use the McDonnell Douglas model for summary judgment, the employer only has to produce evidence that there was a legitimate reason for the employment action and the employee must show that the reason given is pretextual. McDonnell Douglas v. Green, 411 U.S. 792 (1973). But there are problems with the approach. Even in discrimination cases, the McDonnell Douglas framework does not apply at trial. Postal Service v. Aikens, 460 U.S. 711 (1983). And we have said, in a way that can hardly be misunderstood, that we disapprove of a McDonnell Douglas burden-shifting approach in FMLA cases not involving discrimination. Diaz. Nevertheless, I think the majority here has allowed a McDonnell Douglas-style analysis to cast too dark a shadow over its view of this case.

What must be remembered is that this is a labor case, not a discrimination case. Congress has given the employee the substantive right to be treated as she would have been had she had not taken leave. She should not have to prove that the company would have provided her a certain benefit except for her taking leave. It makes

sense that the company, which must produce evidence on the issue even under the majority's analysis, should have to prove she would not have received the benefit. In short, in rejecting the Labor Department's reasonable interpretation of the substantive provisions of the FMLA, the majority requires an analysis appropriate to discrimination cases, not to a statute that confers substantive rights. I would affirm.