285 F.Supp.2d 1212 (2003)
Ronald Lawrence JONES, Plaintiff,
v.
CITY OF ST. LOUIS, et al., Defendants.
No. 4:01 CV 1444 DDN.
United States District Court, E.D. Missouri, Eastern Division.
August 6, 2003.
As Amended by Supplemental Order August 11, 2003.
*1213 Ronald L. Jones, St. Louis, MO, Pro se.
Bryan T. Voss, Blackwell and Associates, P.C., O'Fallon, MO, Allen P. Press, Green and Schaaf, St. Louis, MO, for Plaintiff.
Thomas R. McDonnell, St. Louis City Counselor, St. Louis, MO, for Defendants.

MEMORANDUM
NOCE, United States Magistrate Judge.
This matter is before the court upon the motion of defendant City of St. Louis (the City) for summary judgment (Doc. 33). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).[1] Oral argument was heard on August 1, 2003.

*1214 I. UNDISPUTED FACTS
The relevant facts are without substantial dispute. Plaintiff lives at 4019 Labadie in St. Louis. A 1987 Buick Century was titled to plaintiff's father, Monroe Jones, Jr., who, prior to passing away on July 2, 2000, had resided at 3841 Lafayette. Plaintiff began using the vehicle earlier that year and did not do anything to title the vehicle in his own name after his father's passing. On April 24, 2001, Bill's Towing Service (BTS) towed the vehicle, which was parked in front of 4019 Labadie, after an officer (name unknown) from the St. Louis Metropolitan Police Department (SLMPD) called for a tow truck. The officer gave plaintiff the opportunity to remove some items from the vehicle; however, plaintiff left several other items in the car. Plaintiff did not ask the officer to stop and let plaintiff remove his remaining items. The officer gave him BTS's telephone number and address. (Doc. 39 Ex. 2 at 4-10.)
After making repeated calls to the St. Louis Municipal Court, plaintiff spoke with Associate City Counselor George Hubell. This occurred approximately ten days to two weeks after the vehicle was towed. Plaintiff told Hubell what had happened with the vehicle; Hubell signed and gave plaintiff a "blue" form dismissing the tickets, and directed plaintiff to contact BTS and tell it what had taken place. The next day, plaintiff telephoned BTS and spoke with a woman who told him that the charges were "something like 150 dollars." When plaintiff responded that he did not have any money, the woman replied that he needed money to get the car released. Plaintiff next called Hubell, who told him to tell BTS that it should release the vehicle and that all tickets had been dismissed. Plaintiff relayed this information to BTS but was told "M-O-N-E-Y." He had no further contact with anyone from the City regarding his personal property. (Id. at 11-16.)
In April 2001, plaintiff's mother was living at 3841 Lafayette. (Id. at 16.) During the deposition, plaintiff was shown an April 26, 2001 letter addressed to Monroe Jones, Jr., at 3841 Lafayette, which advised that the vehicle had been impounded, and explained the storage rates and procedure for claiming the vehicle. The letter warned that, if not claimed within thirty days, the vehicle would be subject to sale at public auction or disposal under the applicable provisions of Chapter 17.56 of the Revised Code of the City of St. Louis. Additionally, the letter advised the addressee of his right to a hearing to contest the towing or removal of the vehicle and provided a telephone number to call to request a hearing. The letter also noted that there was a hold on the vehicle and that release papers needed to be obtained for the St. Louis Metropolitan Police Department. (Doc. 39 Ex. 6.)
Plaintiff testified in his deposition that he had not previously seen the April 26 letter, that his mother never told him about the letter, that he did not know of the procedure for and did not request a hearing. Plaintiff stated that he did not file any other lawsuit, including a replevin action, regarding the instant matter. (Doc. 39 Ex. 2 at 16-20.)
Plaintiff, who is an ironworker, provided a list of items that were in the vehicle and a price list of tools required for his trade. For some of the items he knew precisely how much he paid; for others he gave price ranges; and for some items, e.g., "various pliers & allen wrenches," he did not know how many he had or how much he had paid for them. (Id. at 26-28, 31-32 & Attachs.)
Plaintiff has also provided an April 24, 2001 tow form with the identification number 460537 (Doc. 39 Ex. 4), an April 24 order from the City's police department to "City of St. Louis Towing," directing that *1215 the vehicle identified by number 460537 be held until receipt of a release order (Doc. 39 Ex. 5), and a partially completed Abandoned Property Bill of Sale dated May 31, 2001, indicating that City of St. Louis Towing sold the vehicle to "Greg." (Doc. 39 Ex. 7).

II. PROCEDURAL POSTURE
In December 2002, plaintiff filed a five-count first amended complaint against BTS and the City. In Counts I through III, he alleged claims against the City for conversion of vehicle (Count I), conversion of personal property (Count II), and violation of plaintiff's civil rights, i.e., his due process rights and rights against unreasonable searches and seizures (Count III). In Counts IV and V, he alleged claims against BTS for conversion of vehicle (Count IV) and conversion of personal property (Count V). (Doc. 24.) In June 2003, plaintiff filed a stipulation of dismissal without prejudice of Counts I and IV, the conversion-of-vehicle counts. (Doc. 32.)
The City argues in its motion for summary judgment that (1) because state tort law provided an adequate post-deprivation remedy  replevin  to which plaintiff did not avail himself, he may not bring a constitutional claim under 42 U.S.C. § 1983; and (2) plaintiff has no evidence that the City has a policy or custom that caused him damage. (Doc. 33.)
In response, plaintiff argues that (1) the City's actions were undertaken pursuant to an orderly and planned procedure, (2) because the City does not dispute that its actions were not random or unauthorized, it was required to provide him pre-deprivation process before disposing of his property,[2] and (3) no such process was provided. Plaintiff also asserts that the notice of towing sent his deceased father did not invite plaintiff to proceed under Revised Code for the City of St. Louis (City Code) § 17.56.060 for the return of his personal property. In a footnote, he maintains there exist genuine issues as to the adequacy of the replevin remedy because he brought the instant case pro se and in forma pauperis and Missouri law requires that a bond be filed with any petition for replevin in an amount twice that of the value of the property at issue, citing Mo. R. Civ. P. 99.06; and the property was sold to an unknown third party who would have been necessary to any replevin action. (Doc. 39 at 8-11.)

III. DISCUSSION
A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "In deciding whether there is a genuine issue of material fact, the court must view all evidence in the light most favorable to the non-moving party and must give that party the benefit of all justifiable inferences." Jenkins v. S. Farm Bureau Cas., 307 F.3d 741, 743 (8th Cir.2002).
A municipality cannot be held liable solely on a theory of vicarious liability or respondeat superior. City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); Monell v. Dep't of Social Servs., 436 U.S. 658, 694-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Any theory of municipal liability must be carefully controlled at three critical points: (1) identifying the specific policy or custom, (2) fairly attributing the policy and the fault for its creation to the municipality, and (3) finding the necessary affirmative link between identified policy or custom and the specific violation. See Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. *1216 1987), cert. denied, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). The burden is on the plaintiff to demonstrate the essential policy or custom. See Bd. of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37, 260 F.3d 602, 612 (7th Cir.2001); Kinman v. Omaha Pub. Sch. Dist., 94 F.3d 463, 467 (8th Cir.1996); McGautha v. Jackson County, Mo., Collections Dep't, 36 F.3d 53, 55-56 (8th Cir.1994). A municipal custom is a practice of municipal officials that is not authorized by written law, but which is so permanent and well-settled as to have the force of law. Harris v. City of Pagedale, 821 F.2d 499, 504 n. 7 (8th Cir.) (citing Monell, 436 U.S. at 691, 98 S.Ct. 2018), cert. denied, 484 U.S. 986, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987). A municipal policy may be found in a city code. See, e.g., Criswell v. City of Dallas, Tex., No. 3:00-CV-0687, 2001 WL 609480, at *5 (N.D.Tex. May 29, 2001).
Plaintiff's attempt to establish liability on the part of the City fails at the first of the hurdles noted in Spell; although plaintiff contends that the City's actions were not random or unauthorized, he points to no specific "custom" or "policy" of the City. Count III of plaintiff's amended complaint makes no mention of either word. Moreover, plaintiff's general assertion during oral argument  that Exhibit 3, i.e., Chapter 17.56 of the Code, "sets forth the City's policy and custom in dealing in this issue"  does not provide the missing specificity, because Chapter 17.56 consists of no less that twenty-five code sections.[3]
Even if the City were not entitled to summary judgment on the basis of plaintiff's failure to identify a policy or custom, summary judgment would be warranted because of the existence of an adequate post-deprivation remedy. Under the Parratt/Hudson doctrine, a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a procedural due process violation if the state provides an adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 529-37, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Parratt v. Taylor, 451 U.S. 527, 535-45, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); see also Zinermon v. Burch, 494 U.S. 113, 128-32, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (the rationale behind the Parratt/Hudson doctrine is that states could not predict and thus could not be expected to safeguard against random and unauthorized deprivations through pre-deprivation processes).
In Missouri, a person claiming the right to possession of personal property wrongfully detained by another may bring an action in replevin. Mo.Rev.Stat. § 508.020[4]; Mo. R. Civ. P. 99.01. Plaintiff *1217 did not file such an action. Lack of money, per se, does not render the replevin remedy inadequate, because Missouri statutes and rules of court provide authority for courts to waive filing fees and permit litigants to proceed in forma pauperis. See Mo.Rev.Stat. § 514.040; Mo. R. Civ. P. 77.03; cf. Williams v. St. Louis County, 812 F.2d 1079, 1081 (8th Cir.1987) (reversing the dismissal of a § 1983 complaint, based on availability of replevin remedy, where Missouri state courts gave no reasons for denying plaintiff's requests to proceed in forma pauperis). Similarly, replevin is not an inadequate remedy simply because plaintiff did not know the location of his personal items; he has not specified what, if any, effort he made to learn of the location of his personal items after the vehicle was sold. Moreover, he could have brought a replevin action against the City and during the discovery process learned what happened to his items. Cf. King v. Fletcher, 319 F.3d 345, 350 (8th Cir.2003) ("a state remedy is inadequate if it requires the owner of the seized property to go to unreasonable lengths to recover his property" (emphasis added)).
An Eighth Circuit decision, Allen v. City of Kinloch, 763 F.2d 335 (8th Cir.), cert. denied, 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985), is on point with the instant action. In that case, brought under § 1983, it was alleged that Kinloch police, without giving pre-towing notice, had three of Allen's trucks towed off property he owned or occupied. The Eighth Circuit, "see[ing] no reason to suppose Allen could not have obtained adequate relief for the taking of his trucks in a replevin action," held that Allen had failed to establish any violation of his constitutional rights. Id. at 337.
Although plaintiff argues that Lathon v. City of St. Louis, 242 F.3d 841 (8th Cir. 2001), is controlling, that case is factually and legally distinguishable from this one. In Lathon, the plaintiff's weapons and ammunition were seized during a search of his residence. No criminal charges were ever filed against Lathon in connection with the property seized, but his requests for the return of his weapons and ammunition were rejected. Thereafter, five of Lathon's weapons were given to third parties  the sheriffs offices of three different counties in Missouri. Id. at 842. This was "undisputed." Id. at 844. The Eighth Circuit stated that replevin was an inadequate remedy because Lathon would have been required to file four separate suits to secure the return of his weapons. Id. In the instant case, there is no evidence that plaintiff's property went to different counties thereby necessitating multiple suits.[5]
The court, thus, will dismiss on its merits Count III of the first amended complaint. The court has determined not to exercise its supplemental jurisdiction over the remaining Count II Missouri common law claim, because no claim remains for disposition over which the court has original jurisdiction. 28 U.S.C. § 1367(c)(3).
An appropriate order, granting the City's motion for summary judgment as to Count III of the first amended complaint, and dismissing Counts I, II, and IV without prejudice, will accompany this memorandum.

*1218 ORDER

In accordance with the memorandum filed herewith,
IT IS HEREBY ORDERED that the motion for summary judgment of defendant City of St. Louis as to Count III of plaintiff's first amended complaint (Doc. 33) is granted. Count III of the first amended complaint is dismissed with prejudice.
IT IS FURTHER ORDERED that Counts I, II, and IV of plaintiff's first amended complaint are dismissed without prejudice.
NOTES
[1] Plaintiff's first amended complaint included claims against Bill's Towing Service; however, the claims were severed under Fed. R.Civ.P. 21. See Rice v. Sunrise Express, Inc., 209 F.3d 1008, 1014 (7th Cir.), cert. denied, 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000).
[2] During oral argument, plaintiff conceded that, as an individual with property in the vehicle, he was not owed pre-deprivation process prior to the towing of the vehicle.
[3] Among Chapter 17.56's provisions is an important one of which plaintiff did not avail himself. See City Code 17.56.060 ("Any person ... aggrieved by any decision of the Metropolitan Police Department to remove a vehicle pursuant to Section 17.56.020 may request a hearing before the Director of Streets or his designee.").
[4] Section 508.020 provides that

Suits commenced by attachment against the property of a person, or in replevin or claim and delivery of personal property, where the specific property is sought to be recovered, shall be brought in the county in which such property may be found; and in all cases where the defendant in actions in replevin or claim and delivery of personal property is a nonresident of the county in which the suit is brought, service shall be made on him as under like circumstances in suits by attachment.
Mo.Rev.Stat. § 508.020.
[5] Moreover, the entire replevin discussion in Lathon is dicta. See id. at 844 ("the adequacy of a postdeprivation remedy is not relevant to whether Mr. Lathon may maintain his § 1983 claims," because the challenged actions were not random and unauthorized); cf. Coleman v. Watt, 40 F.3d 255, 262 (8th Cir.1994) ("[T]he availability of state law postdeprivation remedies bears relevance only where the challenged acts of state officials can be characterized as random and unauthorized.").