Cora C. PARKER, Plaintiff,

v.

HAHNEMANN UNIVERSITY HOSPITAL, et al., Defendants.

Civil No. 00–4173 (JBS).

United States District Court, D. New Jersey.

Dec. 18, 2002.

William M. Tambussi, Esquire, Susan M. Leming, Esquire, Brown & Connery, LLP, Westmont, NJ, for Plaintiff.

Jerald R. Cureton, Esquire, Renee C. Vidal, Esquire, Michael J. Wietrzychowski, Esquire, Cureton Caplan Hunt Scaramella & Clark, P.C., Delran, NJ, and Michael D. Jones, Esquire, Reed Smith, LLP, Philadelphia, PA, for Defendants.

## OPINION

SIMANDLE, District Judge.

The Family and Medical Leave Act assures eligible employees that they will be able to take up to twelve weeks of needed medical leave in a year without losing their jobs. In this case, plaintiff Cora C. Parker alleges that her former employers, Hahnemann University Hospital, Tenet Healthcare Corporation, Tenet Healthsystem Hahnemann, LLC, Tenet Health Philadelphia, Inc., and John Does I to X, violated her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, ("FMLA"), when they discharged her when she returned from an approved medical leave. Presently before the Court are plaintiff's motion for summary judgment and defendants' cross-motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. These cross-motions require the Court to delineate the parties' respective burdens of proof for the two types of FMLA violations alleged, one brought under the entitlement theory and one under the retaliation theory, which presents an interesting and unsettled question of law. The ultimate issues to be resolved are (1) whether defendants deprived plaintiff of her right to reinstatement under the FMLA, and (2) whether defendants eliminated the position as retaliation against plaintiff for taking FMLA leave. For reasons discussed herein, the Court finds that questions of material fact remain on both issues and this Court will deny both motions for summary judgment.

## I. BACKGROUND

Plaintiff, Cora C. Parker, a licensed and certified nurse in New Jersey and Pennsylvania, was employed by defendants in 1983 as a critical care nurse in the neurological surgical intensive care unit at Hahnemann University Hospital. ("Hahnemann") (Compl. ¶¶ 8, 11; Pl.'s Statement of Facts ¶ 2.) Sometime around 1986, plaintiff became a critical care nurse in Hahnemann's trauma unit and then around 1998, she became a part-time relief shift director. (Compl. ¶¶ 12, 13; Pl.'s Statement of Facts ¶ 3; Defs.' Statement of Facts ¶ 28.)

In November 1998, Tenet HealthSystem, Philadelphia, Inc., assumed operational control of the Hahnemann Hospital and offered plaintiff continued employment, which she accepted. (*Scenna Cert.*, Ex. A.) About six months later, in May 1999, plaintiff assumed the duties of a new pilot position called bed chief, (Pl.'s Statement of Facts ¶¶ 4, 5), and in July 1999, the bed chief job became a full-time position, (*Id.* ¶ 5). As bed chief, plaintiff maintained the status of beds, ensured timely transfers of patients, placed admissions, and communicated with hospital units and the admissions office. (Defs.' Statement of Facts ¶ 29; Pl.'s Counterstatement of Facts ¶ 29.) The Senior Directors of Nursing, Leslie McChesney and Patricia Hushen, told plaintiff that the bed chief position was "here to stay" because the administration and the physicians were happy with it. (Pl.'s Statement of Facts ¶ 6.)

In March 2000, plaintiff became physically unable to perform her job duties as a result of a serious health condition, so she requested medical leave pursuant to the FMLA. (*Id.* ¶¶ 7, 8.) Defendants granted plaintiff's request for leave commencing March 20, 2000. (*Id.* ¶ 9.) When plaintiff left for her FMLA leave, the bed chief job was a full-time, Monday through Friday, 8:00 a.m. to 4:00 p.m., position. (*Id.* ¶ 18.)

Plaintiff told defendants that her last day of FMLA leave would be May 12, 2000 and that she would return to work on Monday, May 15th. (*Id.* ¶ 10.) When she returned on the 15th, she was paged by Senior Director of Nursing, Leslie

McChesney, who asked her to "come upstairs for a meeting." (Pl.'s Counterstatement of Facts ¶ 41.) At the meeting, plaintiff says that Ms. McChesney told her that the bed chief position had been eliminated and that plaintiff should leave the building and return the next day for a meeting with Human Resources Director, Maria Scenna. (*Id.* ¶ 41.)

The parties do not dispute that plaintiff was never told that her bed chief position was going to be eliminated or changed in any way while she was on FMLA leave. (Pl.'s Statement of Facts ¶ 12.) However, the parties do dispute whether plaintiff was aware when she left on FMLA leave that the bed chief job was a temporary job subject to change. Defendants say that plaintiff's supervisor, Sherri Shields, Senior Nursing Director, approached plaintiff in March 2000 before her leave to talk about restructuring the bed chief position to add staffing duties to it. (Defs.' Statement of Facts ¶ 32.) Defendants say that plaintiff "voiced her opposition" to the restructuring, but ultimately agreed that a bed chief could handle additional staffing duties. (*Id.* ¶¶ 32, 33.) Defendants say that the nursing directors continued to discuss the restructuring of the position at weekly meetings during plaintiff's leave, and that they finally decided the week before plaintiff returned to work that the position should be eliminated. (*Id.* ¶¶ 35, 36.) They say that the duties of staffing and patient placement go "hand in hand" so that separating out the patient placement role by having a bed chief was not best for the hospital. (*Leming Cert.,* Ex. D, Tr. 27:13–28:9.)

Plaintiff agrees that she was approached by Sherri Shields in March 2000 about restructuring the bed chief position, but she says that Ms. Shields told her that she would be "tak[ing] some time to evaluate" the position and that she would "just sit tight" until the plaintiff returned from leave and would pursue it further at that time. (Pl.'s Counterstatement of Facts ¶ 31.) Plaintiff says that instead of waiting for her return from FMLA leave, the nursing directors decided to eliminate her position so that she would not return. (*Id.* ¶ 36.)

Regardless of how it happened, plaintiff's job was eliminated. At the May 16, 2000 meeting, Human Resources Director, Maria Scenna told plaintiff about other available jobs at the hospital. (*Id.* ¶¶ 43–44; Defs.' Statement of Facts ¶ 42.) Plaintiff could apply for the position of unit director of oncology, could work as a relief shift director, staff nurse, or per diem staff nurse, or could contact the job posting hotline to search for another suitable position. (Pl.'s Statement of Facts ¶¶ 15, 19, 20, 21; Defs.' Statement of Facts ¶¶ 43, 44.) If she chose not to accept any of the positions, plaintiff would receive severance in the form of salary continuation for twelve weeks. (*Vidal Cert.,* Ex. B.)

Plaintiff did not accept any of the jobs. She did not feel qualified for the position as unit director of oncology, a position that the hospital could not transfer her to unless she applied and interviewed for it in accordance with hospital policy. (Pl.'s Statement of Facts ¶ 16; Defs.' Statement of Facts ¶ 43.) She did not take the relief shift director, staff nurse, or per diem staff nurse positions because they were not full-time, daytime, Monday to Friday positions and because they were subordinate positions in status when compared to bed chief. (Pl.'s Counterstatement of Facts ¶ 44.) Plaintiff has not worked at the hospital since the May 16, 2000 meeting. (Defs.' Statement of Facts ¶ 44.)

After plaintiff's termination, defendants created a new position known as nursing resources director. (*Id.* ¶ 38; Pl.'s Statement of Facts ¶ 22.) Plaintiff claims that

the job was created as early as September 1999; defendants say the job was created in December 2000. (Pl.'s Counterstatement of Facts ¶ 38; Defs.' Statement of Facts ¶ 38.) The job included some of the responsibilities that the bed chief position included. (Defs.' Statement of Facts ¶ 39; Pl.'s Statement of Facts ¶ 22.) The position was filled by Mary Beth Leahy, who had been working as a day-shift nurse when the job was created. (*Vidal Cert.*, Ex. F, Tr. 57:12–60:22.) Defendants say that plaintiff was not given the position because she was no longer employed by the hospital.

On August 25, 2000, plaintiff filed a complaint in this Court alleging that defendants violated the FMLA by (1) failing to return plaintiff to the position she held prior to her leave, (2) failing to properly notify her that her position was being eliminated while she was on leave, and (3) failing to offer her an equivalent position upon eliminating her old one. (Compl.¶ 25.) Plaintiff alleges that as a proximate cause of defendants' actions, she has suffered economic loss, loss of wages, loss of employment benefits, and emotional and physical pain and suffering. (Compl.¶ 26.) Plaintiff seeks immediate reinstatement to her position as shift director/bed chief at HUH or immediate reinstatement in an equivalent position, compensatory damages in an unspecified amount, and attorneys' fees and costs related to this suit. (*Id.*)

On November 20, 2000, defendants filed a motion to dismiss plaintiff's FMLA claim and to compel arbitration pursuant to the terms of an employment agreement that plaintiff had signed. [Docket Item 6–1.] Defendants' motion was denied by this Court's Opinion and Order dated June 15, 2001. [Docket Items 9–1, 10–1.] Defendants filed a motion for reconsideration of the June 15th order on June 22, 2001, [Docket Item 11–1], which was denied by this Court on July 17, 2001, [Docket Item 13–1].

On June 12, 2002, plaintiff filed the present motion for summary judgment, [Docket Item 21–1], and defendants filed the present cross-motion for summary judgment, [Docket Item 24–1]. The case was referred to mediation on August 15, 2002 and all proceedings were stayed for ninety days. [Docket Item 36–1.] Mediation was not successful in resolving this dispute, so this Court will now consider the motions for summary judgment.

## II. DISCUSSION

The Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*, was enacted to provide leave for workers whose personal or medical circumstances necessitate that they take time off from work in excess of what their employers are willing or able to provide. *Victorelli v. Shadyside Hosp.*, 128 F.3d 184, 186 (3d Cir.1997) (citing 29 C.F.R. § 825.101). The Act is intended "to balance the demands of the workplace with the needs of families ... by establishing a minimum labor standard for leave" that lets employees "take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse or parent who has a serious health condition." *Churchill v. Star Enters.*, 183 F.3d 184, 192 (3d Cir.1999) (quoting 29 U.S.C. § 2601(b)(1), (2); S.Rep. No. 103–3 at 4).

To present a claim under the FMLA, a plaintiff must show (1) she is an eligible employee under the FMLA, (2) defendant is an employer subject to the requirements of the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave notice to the defendant of her intention to take FMLA leave, and (5) defendant denied her the benefits to which she was entitled under the FMLA. *Spur-*

lock v. NYNEX, 949 F.Supp. 1022, 1033 (W.D.N.Y.1996); Belgrave v. City of New York, 1999 WL 692034, *44 (E.D.N.Y. Aug.31, 1999), aff'd, 216 F.3d 1071 (2d Cir.2000).

The parties do not dispute the first four factors; they agree that plaintiff was an eligible employee, that defendant was a covered employer, that plaintiff was entitled to FMLA leave, and that plaintiff requested FMLA leave. Their disagreement revolves around the fifth factor. Plaintiff argues that the defendant denied her the benefits to which she was entitled under the FMLA because she was not reinstated to her position or to an equivalent position when she returned from leave. Plaintiff also argues that she was denied the benefit because the defendants retaliated against her for taking FMLA leave. Defendants argue that they complied with the FMLA, eliminated plaintiff's position for legitimate reasons, and offered plaintiff equivalent positions that she chose not to take.

This Court finds that questions of fact remain about the circumstances of defendants' decision to eliminate plaintiff's job and will deny summary judgment.

### A. Summary Judgment Standard

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.' " Hunt v. Cromartie, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999)(quoting Anderson, 477 U.S. at 255, 106 S.Ct. 2505). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250, 106 S.Ct. 2505; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329–330 (3d Cir.1995) (stating that "the nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial").[1]

The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. Weissman v. United States Postal Serv., 19 F.Supp.2d 254 (D.N.J.1998). When ruling on cross-motions for summary judgment, the court must consider the motions

---

**1.** The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir.1989), cert. denied, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). However, where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S.Ct. 2548.

independently, *Williams v. Philadelphia Hous. Auth.*, 834 F.Supp. 794, 797 (E.D.Pa.1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994), and view the evidence on each motion in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. *Burden of Proof*

■ As an initial matter, this Court must determine the burden of proof that each party must sustain to prevail on these crossmotions for summary judgment. This Court finds that the burden of proof differs based on the type of FMLA violation. *See Voorhees v. Time Warner Cable Nat'l Div.*, 109 F.Supp.2d 384 (E.D.Pa. 1999) (applying burden of proof based on type of FMLA claim). A plaintiff can seek recovery for a violation of the FMLA under two different theories, the entitlement theory and the retaliation theory. *See Hodgens v. Gen'l Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir.1998). Each will be discussed in turn.

### 1. Entitlement Theory

■ The first theory of recovery under the FMLA is the entitlement, or interference, theory. It is based on the prescriptive sections of the FMLA which create substantive rights for eligible employees. *Hodgens*, 144 F.3d at 159. Eligible employees are entitled to up to twelve weeks of unpaid leave per year because of a serious health condition, a need to care for a close family member with a serious health condition, or a birth, adoption, or placement in foster care of a child. *Id.*

(citing 29 U.S.C. § 2612(a)(1)). An employee is also entitled to intermittent leave when medically necessary, 29 U.S.C. § 2612(b), and to return after a qualified absence to the same position or to an equivalent position, 29 U.S.C. § 2614(a)(1). These prescriptive rights "set floors for employer conduct." *Hodgens*, 144 F.3d at 159.

■ An employee can allege that an employer has violated the FMLA because she was denied the entitlements due her under the Act. 29 U.S.C. § 2615(a)(1).[2] In such a case, the employee only needs to show she was entitled to benefits under the FMLA and that she was denied them. 29 U.S.C. §§ 2612(a), 2614(a). She does not need to show that the employer treated other employees more or less favorably and the employer cannot justify its action by showing that it did not intend it or it had a legitimate business reason for it. *Hodgens*, 144 F.3d at 159. The action is not about discrimination; it is about whether the employer provided its employees the entitlements guaranteed by the FMLA.

■ The burden of proof issue is complicated when the plaintiff alleges that she was deprived of the FMLA entitlement of reinstatement to the same or an equivalent position because the FMLA does not absolutely protect an employee's reinstatement. *Taylor v. Union Inst.*, 30 Fed.Appx. 443, 452 (6th Cir.2002). Instead, the Act allows the employer to deny reinstatement if the employee would have lost her job during the leave period even if she had been working. 29 U.S.C. § 2614(a)(3).[3] An em-

---

**2.** 29 U.S.C. § 2615(a)(1) provides:

[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided in this subchapter.

**3.** 29 U.S.C. § 2614(a)(3) states:

Nothing in this section shall be construed to entitle any restored employee to ... any right, benefit, or position to which the employee would have been entitled had the employee not taken leave.

ployee is not protected from an adverse employment decision that would have occurred even if she had not taken leave because "[t]he FMLA does not give the employee on protected leave a bumping right over employees not on leave." *Taylor,* 30 Fed.Appx. at 452.

■ The issue in such a case is which party bears the burden of proving that the employment action would or would not have occurred if plaintiff had not taken leave. Department of Labor regulations interpreting the FMLA place the burden on the employer, stating:

> An employee has no greater right to reinstatement or to other benefits than if the employee had been continuously employed during the FMLA leave period. *An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested* in order to deny restoration to employment. For example:
>
> (1) If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to continue FMLA leave, maintain group health plan benefits, and restore the employee cease at the time the employee is laid off . . . *An employer would have the burden of proving that an employee would have been laid off during the FMLA leave period and,*

> *therefore, would not be entitled to restoration.*

29 C.F.R. § 825.216(a)(1) (emphasis added). The Third Circuit has not considered whether this regulation places the burden on the employer. The Tenth Circuit has held that it does and functions like an affirmative defense. *Smith v. Diffee Ford–Lincoln–Mercury,* 298 F.3d 955, 963 (10th Cir.2002). Under their approach, the plaintiff presents her FMLA case by showing, as explained above, that she was entitled to benefits and denied them. *Id.* Then, the burden is on the employer to mitigate its liability by proving that she would have lost her job whether or not she took leave. *Id.* The Seventh Circuit instead found that the regulation leaves the burden on the plaintiff to prove that she was entitled to benefits and denied them even though the defendant presented some evidence indicating that her job would have been terminated if she had not taken leave. *Rice v. Sunrise Express,* 209 F.3d 1008, 1018 (7th Cir.), *cert. denied,* 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000). The Seventh Circuit still validates the regulation,[4] but finds that it is "best understood not as the agency's understanding as to Congress' allocation of the ultimate burden of proof in the litigation context, but as an explanation of the nature of the substantive right created by the statute." *Id.* It interprets the regulation as only requiring the defendant to come forward with some evidence that the termination would have occurred without the leave. *Id.*[5]

---

**4.** The courts which have considered the regulation have found it to be valid. *See Smith,* 298 F.3d at 963 (finding regulation valid and "not arbitrary, capricious, or manifestly contrary to the FMLA"); *Duckworth v. Pratt & Whitney, Inc.,* 152 F.3d 1, 5 (1st Cir.1998) (quoting 29 U.S.C. § 2654, stating that "[w]e do not write on a clean slate. The [FMLA] delegates to the Secretary of Labor broad authority to 'prescribe such regulations as are necessary to carry out' the Act.") The regula-

tion was promulgated pursuant to the requirements of notice-and-comment rulemaking under the Administrative Procedure Act, 5 U.S.C. § 553, and this Court also finds that the Secretary validly exercised his delegated authority.

**5.** The Eleventh Circuit has considered the regulation, but its finding has been interpreted by both the Seventh and Tenth Circuits to support their decision. *O'Connor v. PCA*

This Court finds that the better approach is the one followed by the Tenth Circuit which places the burden on the employer. An issue about the burden of proof is a "question of policy and fairness based on experience in the different situations," *Keyes v. Sch. Dist. No. 1*, 413 U.S. 189, 209, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973) (citing 9 J. Wigmore, *Evidence*, § 2486 at 275), and policy, fairness, and experience support the Tenth Circuit's approach. As for policy, the approach upholds the validity and the plain language of the regulation that was promulgated in accordance with standard administrative procedure. As for fairness, the approach places the burden on the party who holds the evidence that is essential to the inquiry, evidence about future plans for a position, discussions at management meetings, and events at the workplace during the employee's FMLA leave. *See Int'l Bd. of Teamsters v. United States*, 431 U.S. 324,

359 n. 45, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (stating that burdens of proof should "conform with a party's superior access to the proof"). As for experience, other labor statutes also place the burden on the employer to mitigate its liability to pay an employment benefit in certain situations.[6] As a result, this Court will require plaintiff to bear the burden of proving that she was entitled to reinstatement and was denied it, and will require defendants to mitigate their liability by bearing the burden of proving plaintiff's position would have been eliminated even if she had not taken FMLA leave.

## 2. Retaliation Theory

██ The FMLA includes a second theory of recovery which is known as the retaliation, or discrimination, theory. It protects employees from suffering discrimination because they have exercised

---

*Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir.2000), cited in *Smith*, 298 F.3d at 963 and *Rice*, 209 F.3d at 1018. The Eleventh Circuit held that "when an 'eligible employee' who was on FMLA leave alleges her employer denied her FMLA right to reinstatement, the employer has an *opportunity* to demonstrate it would have discharged the employee even if she had not been on FMLA leave." *O'Connor*, 200 F.3d at 1354. The word "opportunity" has been interpreted to mean burden of proof and burden of coming forward with some evidence. *See Smith*, 298 F.3d at 963; *Rice*, 209 F.3d at 1018.

**6.** Congress stated that the FMLA is intended to:

> establish[] a minimum labor standard for leave. The bill is based on the same principle as the child labor laws, the minimum wage, Social Security, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards for employment.

*Churchill v. Star Enters.*, 183 F.3d 184, 192 (3d Cir.1999) (quoting S.Rep. No. 103–3 at 4, 1993 U.S.C.C.A.N. at 6–7).

Under the National Labor Relations Act, when an employee has lost his job, the burden is initially on the employee to prove his entitlement to backpay under the Act for the period he was out of work. The employer, though, bears the burden to mitigate its liability for backpay by showing that the employee refused substantially equivalent employment during the period. *See Tubari Ltd. v. N.L.R.B.*, 959 F.2d 451, 453–54 (3d Cir.1992); *see also N.L.R.B. v. FES*, 301 F.3d 83, 87–88 (3d Cir.2002) (applying different burden of proof for claims of discrimination due to the exercise of rights under the NLRA).

Under the Social Security Act, the burden is also initially on the employee to prove her entitlement to benefits under the Act by showing that she is not engaged in substantial gainful employment, suffers from a severe impairment or its functional equivalent, and cannot perform her past relevant work. Then, the Commissioner of Social Security bears the burden to mitigate its liability for paying benefits by showing that there is other substantial gainful employment in the national economy that the employee could perform. *Kangas v. Bowen*, 823 F.2d 775, 778 (3d Cir. 1987); *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir.1983).

their rights under the FMLA. *Hodgens,* 144 F.3d at 159. It is based on the "proscriptive rights" of the FMLA which prevent an employer from discriminating against employees and prospective employees who have taken FMLA leave. 29 U.S.C. § 2615(a)(2);[7] 29 C.F.R. § 825.220(c).[8]

 The issues in a claim brought under this theory are similar to those raised in cases alleging other types of employment discrimination. *Hodgens,* 144 F.3d at 160. The employer's motive is relevant, and the employer can defend its action as one based on a legitimate nondiscriminatory reason. *Id.* In cases under the retaliation theory, therefore, courts generally apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) which is used in discrimination cases brought under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the American with Disabilities Act.[9] *See Gventer v. Theraphysics Partners of Western Pa., Inc.,* 41 Fed.Appx. 552, 553 (3d Cir.2002) (considering FMLA retaliation case where district court applied *McDonnell Douglas* approach); *Dilenno v. Goodwill Indus. of Mid–Eastern Pa.,* No. 96–8053, 1997 WL 798246 at *8 (E.D.Pa. Dec.12, 1997), rev'd on other grounds, 162 F.3d 235 (3rd Cir.1998) (applying *McDonnell Douglas* approach).[10]

The *McDonnell Douglas* burden-shifting framework involves three steps. *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817. First, the plaintiff must present sufficient evidence to establish a prima facie case of retaliation. *Id.; see also Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To do so, the plaintiff must show (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *Hodgens,* 144 F.3d at 161. By presenting proof of a prima facie case, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against her and the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The employer "must

---

7. 29 U.S.C. § 2615(a)(2) provides:
 It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

8. 29 C.F.R. § 825.220(c) provides, in part:
 An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example . . . employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions . . .

9. For Third Circuit cases where *McDonnell Douglas* is applied to employment discrimination cases, *see Anderson v. Consol. Rail Corp.,* 297 F.3d 242, 249 (3rd Cir.2002) (ADEA case); *Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 318–19 (3rd Cir.2000) (Title VII case); *Shaner v. Synthes,* 204 F.3d 494, 500–01 (3rd Cir.2000) (ADA case).

10. *See also Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 315 (6th Cir.2001); *O'Connor,* 200 F.3d at 1353 (applying burden-shifting to FMLA retaliation claim as is "common to employment discrimination claims"); *Hodgens,* 144 F.3d at 160 (applying *McDonnell Douglas* to FMLA retaliation claim because it deals with the "tricky issues" present in discrimination claims); *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1325 (10th Cir.1997).

clearly set forth, through the introduction of admissible evidence, the reasons for the [employee's termination]" which show that the "plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Aikens,* 460 U.S. at 714, 103 S.Ct. 1478 (quoting *Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089). If the employer's evidence creates a genuine issue of fact, then the presumption of discrimination "drops from the case" and the plaintiff must show that the employer's stated reason for terminating her was in fact a pretext for retaliating against her because she took the protected FMLA leave. *Aikens,* 460 U.S. at 715, 103 S.Ct. 1478. This Court will apply this burden-shifting framework to plaintiff's FMLA retaliation claim.[11]

In summary, this Court holds that a different burden of proof applies to plaintiff's two FMLA claims, even though their basis lies in the same set of facts. For plaintiff's first claim that she was deprived her entitlement to reinstatement under the FMLA, she will only have to prove that she was denied a right under the FMLA. For defendants to prevail, they will have to prove that she would have been denied the right even if she had not taken the FMLA leave. For plaintiff's second claim that she was not reinstated because the defendants discriminated against her for taking FMLA leave, she will have to present a prima facie case of discrimination and will have to show that any legitimate business reasons articulated by the defendant to justify the action are pretextual.

### C. *FMLA Entitlement Claim*

Plaintiff first claims that defendants denied her the reinstatement that she was entitled to under the FMLA. (Pl.'s Br. at 4.) As explained *supra,* the FMLA entitles eligible employees to reinstatement at the end of FMLA leave to the position of employment held before leave or to an "equivalent position". 29 U.S.C. §§ 2614(a)(1)(A), (B). For defendants to show that plaintiff was not entitled to reinstatement, they must show (1) that the position plaintiff held before leave would have been eliminated even if she had never taken the FMLA leave, *see supra* section II(B), and (2) that it offered plaintiff reinstatement in an equivalent position that she chose not to accept, *Watkins v. J & S Oil Co.,* 164 F.3d 55, 59–60 (1st Cir.1998). An equivalent position is one which is substantially equal or similar in terms of employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1)(B); 29 C.F.R. § 825.215.[12] Determining whether the job offered is equivalent is generally a question of fact for the jury. *Watkins,* 164 F.3d at 60. Plaintiff has shown that she took FMLA leave and that she was not reinstated as bed chief. However, this Court cannot grant summary judgment on the reinstatement claim for plaintiff or defendants because questions of material fact remain about wheth-

**11.** The *McDonnell Douglas* framework is not "intended to be rigid, mechanized, or ritualistic" but is meant to be a "sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

**12.** 29 C.F.R. § 825.215 defines an equivalent position as one that is

virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibility, which must entail substantially equivalent skill, effort, responsibility, and authority.

Requiring equivalent conditions however, "does not extend to de minimis or intangible, unmeasurable aspects of the job." *Id.*

er plaintiff's job would have been eliminated regardless of the FMLA leave and whether plaintiff was offered an equivalent position.

First, plaintiff has presented evidence that her job may not have been eliminated if she had worked instead of taking FMLA leave. She presents her deposition testimony where she states that the bed chief role "worked so well that . . . Leslie McChesney and Trish Hushen . . . informed me that the role was here to stay, that the administration wanted it, the physicians were satisfied with it, it worked well, it moved patients. . . . It may have to be tweaked or compromised, they said, but we'll worry about that later." (*Leming Cert.*, Ex. B, Tr. 121:12–22.) She had other conversations with hospital staff and was told, "in some capacity this position is going to be here to stay . . . we need this position, it's working very, very well, the directors want it . . . [the position is] a go," (*Id.*, Tr. 127:11–128:21). She also presents evidence that directors considered how the position worked without her when they decided to eliminate it. Leslie McChesney said that the status of the position came up when plaintiff was due to return to work, and that:

> we had decided that the position, as a stand-alone position, we didn't need to continue it, and that to let her return, do it for some period of time, and then cut it off would not be, I don't know, helpful to the hospital. Basically, if we hadn't

had her in that position, then we should just continue not having her rather than having her come back, do it for a period and then stop it again. At that point we were not used to running it the way it had.

(*Id.*, Ex. E, Tr. 70:10–20.) [13] A reasonable factfinder could therefore find that had plaintiff remained at work, her job would have continued to work "very, very well," and her position, while perhaps reconfigured or molded to fit the needs of the hospital, would not have been eliminated.

Defendants have presented evidence that the job was slated for change before plaintiff took FMLA leave and that the elimination of the job was inevitable regardless of plaintiff's leave. Sherri Shields, Senior Nursing Director at the hospital, testified that she had discussions with plaintiff about changing the bed chief job before she knew that plaintiff would be taking a leave of absence. (Shields Aff. ¶¶ 2, 3.) She says that she had just arrived at the hospital and met with plaintiff because: ·

> [m]y thoughts about the position were that, first of all, the responsibilities of patient placement go hand in hand with positions of staffing and what would work best, if you have a person doing bed placement, also having responsibility for staffing decisions. I also talked with [plaintiff] . . . about the fact that I was going to take some time to evaluate,

---

**13.** Defendants argue that this Court should not consider that they learned that they could handle the duties of the position without plaintiff while she was on leave, citing *Kohls v. Beverly Enters. Wisc., Inc.*, 259 F.3d 799 (7th Cir.2001). In Kohls, the employer learned of an employee's mishandling and mismanagement of funds during her leave and the court held that the "fact that the leave permitted the employer to discover the problems cannot logically be a bar to the employer's ability to fire the deficient employee."

*Id.* at 806. This case differs significantly from *Kohls* because here, the employer did not learn that plaintiff's performance was unsatisfactory during leave, but learned that the performance of other employees could substitute for plaintiff's performance. The FMLA makes clear that "[a]n employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence." 29 C.F.R. § 825.214(a).

you know, whether or not this temporary position that Leslie had created, or whoever had created, was still necessary or not. . . . I was very new here, and in the process of making up my mind as to whether or not we needed the position as it had been defined.

(*Id.*, Tr. 27:13–28:9.) Therefore, she says that when she

received two telephone messages from plaintiff during her leave, from [plaintiff's] conversations with me I knew that, I suspected, and I assumed that she would be asking me for information about whether or not the role would continue as it had been in the past . . . because she was very anxious about whether or not the position would continue as it had been.

(*Leming Cert.*, Ex. D, Tr. 34:1–35:12.) Chief Nursing Officer Jill Tillman also said that the position was discussed at weekly meetings with senior nursing directors from February through May 2000 because "from an efficiency and effectiveness point of view we needed to combine the staffing function and the patient placement function into one function so that we were placing the patients not just on medical beds, but in the most appropriately staffed beds." (*Vidal Cert.*, Ex. B, Tr. 19:4–20:12; *Id.*, Ex. C, Tr. 69:22–70:23.) Based on this evidence, a reasonable factfinder could find that the bed chief position was inevitably going to be eliminated by the new nursing director because it failed to account for both staffing and patient placement.

The second reason that this Court cannot grant summary judgment on this claim is because questions of fact remain as to whether plaintiff was offered placement in an equivalent position. Plaintiff presents proof that she was not offered the position as unit director of oncology because she was told that she had to apply for it. (Pl.'s Statement of Facts ¶ 15.) She also argues

that while she was offered the positions of shift director, staff nurse, and per diem nurse, they were not equivalent because they required work on evenings and weekends and because they were subordinate in status to her position as bed chief. (*Id.* ¶¶ 19, 20.) Because status, duties, and working conditions are all part of the equivalence inquiry, a reasonable factfinder could determine that these positions were not equivalent.

Defendants argue that they offered plaintiff reinstatement in equivalent positions. They show that plaintiff agreed the oncology unit director position was comparable in status to the bed chief job and that plaintiff could not be reassigned directly to the position without an interview because hospital policy requires a committee interview for all unit director positions. (*Vidal Cert.*, Ex. H, Tr. 28:24–30–13.) They also present the deposition testimony of Marcia Scenna, Director of Human Resources, who testified that she told plaintiff that she could apply for the directorship, that there were not any other viable candidates for it, and that based upon plaintiff's experience with Hahneman, she met the qualifications of the job. (*Leming Cert.*, Ex. G, Tr. 29:23–33:11.) Ms. Scenna also testified that plaintiff did not accept the shift director or staff nurse jobs because she wanted a Monday through Friday position to be home with her husband, (*id.*, Tr. 35:1–8), and because she thought the positions were "a step back" and would be "beneath her," (*id.*, Tr. 35:9–18). Ms. Scenna stated that plaintiff's lifestyle preferences could have been accommodated had she chosen the position as a per diem nurse. (*Id.*, Tr. 27:24–28:6.) Then, her pay would have been higher than it was as bed chief and her hours could have been adjusted according to her availability. (*Id.*) Viewing this evidence, a reasonable factfinder could determine that plaintiff

was offered reinstatement in equivalent jobs, but that she chose not to accept them because of their de minimis differences from the bed chief position.

Therefore, this Court will deny plaintiff's and defendant's motions for summary judgment on plaintiff's entitlement claim because questions of fact remain about whether plaintiff's job was inevitably going to be eliminated during her FMLA leave and about whether plaintiff was offered an equivalent position on her return. The claim will proceed to trial in the normal course.

### D. FMLA Retaliation Claim

Plaintiff next claims that defendants retaliated against her for taking FMLA leave by eliminating her job position. (Pl.'s Br. at 11.) As explained *supra* in section II(B)(2), this Court will apply the *McDonnell Douglas* burden-shifting framework to this claim.[14] This Court will deny the motions for summary judgment on this retaliation claim because genuine questions of fact remain that are material to determining whether defendants discriminated against plaintiff when they eliminated her job or whether they had legitimate business reasons for their actions.

■ Plaintiff has presented evidence that is sufficient to establish a prima facie case of discrimination under the FMLA. She has shown (1) that she took advantage of the protected right to leave under the FMLA, (Pl.'s and Defs.' Statement of Facts ¶¶ 8, 9), (2) that she was adversely affected by defendants' decision to eliminate the position she held prior to leave, (Pl.'s and Defs.' Statement of Facts ¶ 11), and (3) arguable causation between the two due to their temporal proximity.

The causation element of plaintiff's prima facie case is the only element not agreed upon by the parties. However, the parties do agree that plaintiff was told that her job was eliminated the very day that she returned from FMLA leave. (Pl.'s and Defs.' Statement of Facts ¶ 11.) Such temporal proximity is "unduly suggestive" and satisfies the causation element of plaintiff's prima facie case at the summary judgment stage. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279–80 (3d Cir.2000) (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989)).[15]

---

**14.** *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, plaintiff must first establish a prima facie case of discrimination by showing (1) that she took advantage of the protected right to leave under the FMLA, (2) that she was adversely affected by an employment action taken by defendants, and (3) the unfavorable employment action was caused by her choice to take leave under the FMLA. Then, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Then, plaintiff must show that the nondiscriminatory reason given is really a pretext for actual discrimination. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67

L.Ed.2d 207 (1981); *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.

**15.** Using time to satisfy the causation element of the prima facie case requires consideration "with a careful eye to the specific facts and circumstances encountered." *Farrell*, 206 F.3d at 279 (citing *Kachmar v. SunGard Data Sys.*, 109 F.3d 173, 178 (3d Cir.1997)). If the timing of the events is not "unduly suggestive," the plaintiff can still show a causal link with other circumstantial evidence, such as evidence of ongoing antagonism or inconsistent reasons for terminating the employee. *Id.* at 280–81 (citing cases).

Here, plaintiff learned the day she returned from FMLA leave that her job was eliminated. (Pl.'s and Defs.' Statement of Facts ¶ 11.) Plaintiff has shown that defendants decided to eliminate her job during the week immediately prior to her return from leave and that they

■ Defendants, however, have countered plaintiff's prima facie case by presenting a legitimate, nondiscriminatory reason for their decision to eliminate the bed chief position. As explained *supra* in section II(B), defendants have presented evidence that the job was slated for change before plaintiff took FMLA leave, and that Sherri Shields as new nursing director evaluated the position and decided that it was not best for the hospital because "from an efficiency and effectiveness point of view we needed to combine the staffing function and the patient placement function into one function so that we were placing the patients not just on medical beds, but in the most appropriately staffed beds." (*Vidal Cert.*, Ex. B, Tr. 19:4–20:12; *Id.*, Ex. C, Tr. 69:22–70:23.)

Because defendants have presented a legitimate reason, the burden shifts back to plaintiff to show that the legitimate reason given was a pretext for actual discrimination.[16] Here, plaintiff has been able to raise a issue of fact regarding whether defendants' proffered explanation was pretextual by presenting the testimony of Leslie McChesney who said that "[b]asically, if we hadn't had her in that position, then we should just continue not having her rather than having her come back," (*see Leming Cert.*, Ex. E, Tr. 70:10–20), by showing that defendants created a

position similar to plaintiff's position after she left, (*see* Defs.' Statement of Facts ¶ 39; Pl.'s Statement of Facts ¶ 22 describing nursing resources director position), and by showing the close proximity of the job elimination to her leave, *see Jalil*, 873 F.2d at 709 (stating that temporal proximity may be used both to form the prima facie case and to discredit an employer's explanation). Therefore, this Court will deny both motions for summary judgment and allow the factfinder the opportunity to determine the actual motivation for defendants' actions.

### III. CONCLUSION

· Because there are questions of fact about whether plaintiff's job would have been eliminated if she had not taken FMLA leave, whether plaintiff was offered equivalent employment after FMLA leave, and whether defendants eliminated her position for discriminatory reasons, the Court will deny plaintiff's motion for summary judgment and will deny defendants' crossmotion for summary judgment.

The accompanying Order is entered.

### ORDER

This matter having come before the Court upon the motion of plaintiff Cora Parker for summary judgment on her Complaint, and also upon the cross-motion

---

did so because they did not want her to return to the position because they had become accustomed to completing the position's tasks in other ways. (*Leming Cert.*, Ex. D, Tr. 36:17–37:20; *Id.*, Ex. E, Tr. 70:10–20.) The Third Circuit has held on a motion for summary judgment that a plaintiff satisfied the causation element of his prima facie case when the "discharge followed rapidly, only two days" after plaintiff had exercised protected rights. *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989). Therefore, this Court finds the discharge on the day of plaintiff's return is enough to suggest causation at this prima facie stage of the summary judgment motion.

**16.** Once the defendant proffers a legitimate reason for the action, the burden shifts back to the plaintiff to prove the reason was pretextual. Therefore, for defendants to obtain summary judgment, they must show that plaintiff could not raise an issue of fact that may show that the explanation was pretextual. *Jalil*, 873 F.2d at 708. Generally, the determination of whether the reason given was pretextual should be left for the jury because a "finding of discrimination is at bottom a determination of intent." *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1071 (3d Cir.1996).

of defendants Hahnemann University Hospital, Tenet Healthcare Corp., Tenet HealthSystem Hahnemann, LLC, and Tenet Health Philadelphia, Inc. for summary judgment on plaintiff's interference and retaliation FMLA claims; and the Court having considered the parties' submissions; and the Court having heard oral argument on July 18, 2002; and for the reasons expressed in the Opinion of today's date;

**IT IS** this⸱———— day of December, 2002 hereby

**ORDERED** that plaintiff's motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. [Docket Item 21–1] be, and hereby is, *DENIED;* and

**IT IS FURTHER ORDERED** that defendants' cross-motion for summary judgment [Docket Item 24–1] be, and hereby is, *DENIED.*