**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4373-17T3

MARTHA PALMER,

    Plaintiff-Appellant,

v.

EMPLOYMENT HORIZONS, INC.,

    Defendant-Respondent.

_____

Submitted May 6, 2019 – Decided July 12, 2019

Before Judges Messano and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0358-16.

Martha Palmer, appellant pro se.

Kluger Healey, LLC, attorneys for respondent (Phillip G. Ray, on the brief).

PER CURIAM

Defendant Employment Horizons Incorporated is a non-profit corporation providing vocational opportunities and counseling to individuals with

disabilities. Defendant subcontracted to deliver janitorial services at Picatinny Arsenal (Picatinny). At all times relevant to this appeal, as required by the New Jersey Division of Vocational Rehabilitation Services (DVR), defendant provided "job coaches" to clients placed at the site. Defendant first employed plaintiff Martha Palmer in 1991, and, in 2005, assigned plaintiff to Picatinny as a job coach. In March 2015, defendant terminated plaintiff for allegedly violating the company's confidentiality policy by "disclos[ing] personal information about [a client] to other employees" and disclosing "extremely confidential information to [that client] about other clients."

Plaintiff filed a pro se complaint alleging defendant violated the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. In response to plaintiff's motion to compel discovery and defendant's cross-motion for entry of a protective order and to extend discovery, the judge entered an interlocutory order that required defendant to produce five years of redacted case file notes regarding four of its clients, and the payroll records for a fifth. Defendant moved for summary judgment at the close of discovery.

I.

The record before the motion judge revealed that plaintiff consistently received annual bonuses and raises throughout her employment and was never

demoted, suspended or otherwise suffered an adverse employment action. In 2009, she received a performance review that included an addendum critical of her interactions with clients. Plaintiff, however, successfully challenged the evaluation, defendant removed the negative addendum from plaintiff's personnel file and defendant terminated its author, plaintiff's immediate supervisor at the time.

Over the years, plaintiff reported several instances of illegal or inappropriate conduct by clients and staff to her supervisors and outside authorities. In many instances, she became aware of this information through conversations with her clients. In 2008-09, for example, she reported a series of thefts that resulted in the termination of two employees. Plaintiff reported at least three incidents of alleged sexual assault or harassment against her clients over the ensuing years. Two resulted in investigations by Picatinny's police force, and, in all three instances, defendant separated the alleged perpetrators from the clients.

In early 2015, one of plaintiff's clients, M.P., claimed he was frightened about working with another client, J.I., because J.I. brought drugs and alcohol to the base. Plaintiff reported this to her supervisor, Joseph Smith, and requested permission to go to Picatinny's police department with this information. Smith

A-4373-17T3

spoke directly to M.P., apparently assuaged his concerns, and chastised plaintiff about her request to involve law enforcement. Plaintiff acknowledged that it was preferable to investigate the incident in-house before involving an outside agency. There was no written reprimand or other disciplinary action against plaintiff.

Shortly thereafter, J.I. filed a formal complaint with defendant's human resources (HR) department.[1] He alleged plaintiff had revealed personal information about him to others and had told him about other clients' private information. Another client, R.C., confirmed that he was present during conversations plaintiff had with J.I., in which she allegedly told both about various sexual liaisons between clients and instances of sexual harassment of clients. Defendant's HR representative documented J.I.'s and R.C.'s disclosures in memos she prepared.

On March 16, 2015, defendant terminated plaintiff. Citing the allegations by J.I., defendant stated plaintiff's violation of its Code of Ethics was "so severe that [plaintiff] could no longer carry out the duties of [her] position." At her

---

[1] At her deposition and in response to defendant's statement of undisputed material facts, see Rule 4:46-2(a), plaintiff acknowledged having had a personal relationship of short duration with J.I. while being his job coach.

A-4373-17T3

deposition, plaintiff acknowledged that violating defendant's confidentiality policy was, in and of itself, a terminable offense.

Plaintiff did not deny the accusation during the termination meeting, nor did she advise defendant of a text message plaintiff received from M.P. In that text, M.P. denied getting any confidential information from plaintiff, said J.I. was the source of such information and claimed plaintiff was going to be "throw[n] . . . under the bus." At her deposition, plaintiff testified the termination "meeting was a blur" because she was in shock. She has denied sharing any confidential information or violating defendant's policy. Within days of her termination, plaintiff contacted DVR and the Department of Defense (DOD), complaining that defendant was providing job-coaching services to three ineligible individuals.[2]

The motion judge reserved decision on defendant's summary judgment motion following oral argument. In a written decision that accompanied her order granting the motion, the judge reviewed the salient case law. Citing our decisions in <u>Massarano v. New Jersey Transit</u>, 400 N.J. Super. 474, 492 (App.

---

[2] In her deposition, plaintiff admitted that J.I. did not require job-coaching services, yet she completed the necessary "paperwork" on his behalf. Neither DVR nor DOD took any adverse action against defendant as a result of plaintiff's complaints.

A-4373-17T3

Div. 2008), and <u>Klein v. University of Medicine and Dentistry of New Jersey</u>, 377 N.J. Super. 28, 38-39 (App. Div. 2005), the judge explained the burden-shifting analysis to be applied if plaintiff established a prima facie CEPA violation.

The judge found that even though plaintiff "may have internally reported various . . . seemingly unsavory aspects of her employment," she had not suffered any adverse employment action prior to her termination. Although plaintiff contended that the executive director had a vendetta against her, as evidenced by the 2009 negative evaluation, plaintiff successfully challenged that finding, and defendant removed it from her personnel file. The judge concluded plaintiff failed to "establish a causal connection between her alleged whistleblowing and [her] termination." In addition, the judge concluded that the motion evidence demonstrated defendant had a legitimate reason for terminating plaintiff, and plaintiff failed to show that the stated reason, i.e., disclosure of clients' confidential information, was a pretext.

The judge characterized the second count of the complaint as one alleging the "negligent infliction of emotional distress."[3] She concluded this claim was

---

[3] The second count of the complaint alleged defendant caused plaintiff emotional distress, financial loss, public humiliation and embarrassment

barred by the exclusivity provision of the New Jersey Workers' Compensation Act, N.J.S.A. 34:15-8. The judge entered an order granting defendant summary judgment and dismissing the complaint.

Plaintiff moved for reconsideration. In a short written opinion, the judge explained that plaintiff asserted new evidence warranting reconsideration. This new evidence included complaints plaintiff made alleging defendant was in violation of its government contracts and related regulations, and her complaints were still under active investigation.[4] However, the judge rejected this as providing any basis to reconsider her earlier grant of summary judgment. She reasoned that "[d]efendant met its burden by articulating non-retaliatory reasons for [p]laintiff's termination[,]" and plaintiff's motion was nothing more than "a second bite at the apple."

Plaintiff now appeals, arguing the judge improperly granted summary judgment because plaintiff presented a prima facie case that defendant violated CEPA and also rebutted defendant's proffered reason for her termination.

---

through the "negligence and/or unethical and unprofessional actions" of its employees. During oral argument on earlier discovery motions, plaintiff conceded the only cognizable claim was the alleged CEPA violation.

[4] The record does not include the reconsideration motion or supporting documents. Our review is limited, therefore, to the judge's written opinion denying the motion.

A-4373-17T3

Plaintiff also contends the judge incorrectly dismissed the second count of her complaint pursuant to N.J.S.A. 34:15-8. Additionally, plaintiff argues defendant's dilatory and obstructionist conduct during discovery, which the judge failed to address adequately, denied plaintiff the opportunity to present critical testimony. Having considered these arguments in light of the record and governing legal principles, we affirm.

## II.

We review the grant of summary judgment applying the same standard as the motion judge. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). Providing all favorable inferences to the non-moving party, Rule 4:46-2(c), our "task is to determine whether a rational factfinder could resolve [an] alleged disputed issue in favor of the non-moving party." Perez v. Professionally Green, LLC, 215 N.J. 388, 405-06 (2013). A party opposing summary judgment, however, must "do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alteration in original) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)). In other words, disputes about facts that are "immaterial or of an insubstantial nature" provide

no basis to deny the moving party summary judgment. Id. at 480 (quoting Brill, 142 N.J. at 529).

"An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c). "The practical effect of [Rule 4:46-2(c)] is that neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). We owe no deference, however, to the trial court's legal analysis or interpretation of a statute. The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A.

Although plaintiff's complaint did not specify which section of CEPA she alleged that defendant violated, her appellate brief argues the motion record presented a prima facie violation of N.J.S.A. 34:19-3(c). That subsection bars retaliation against an employee who, among other things,

[o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;
>
> . . . .
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3(c).]

To establish a prima facie CEPA claim under this subsection, plaintiff must establish she: (1) reasonably believed defendant's conduct was in violation of a law, rule, regulation, or public policy mandate; (2) performed a whistle-blowing activity identified in N.J.S.A. 34:19-3; and (3) suffered an adverse employment action; (4) which was causally connected to the whistle-blowing activity. Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003) (citing Kolb v. Burns, 320 N.J. Super. 467, 476 (App. Div. 1999)). When a plaintiff cannot establish any one of these elements, dismissal of the CEPA claim is appropriate. See Hitesman v. Bridgeway, Inc., 218 N.J. 8, 29 (2014).

CEPA "does not insulate the complaining employee from discharge or other disciplinary action for reasons unrelated to the complaint." Higgins v.

A-4373-17T3

Pascack Valley Hosp., 158 N.J. 404, 424 (1999). Here, the judge concluded that plaintiff failed to demonstrate a genuine factual dispute that her whistle-blowing activity was causally related to her termination.

Plaintiff argues she continued to advocate for her clients over the years by notifying defendant and others of prohibited conduct, up to and including the incident between M.P. and J.I. in early 2015, shortly after which defendant terminated her.[5] "'[T]he mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two.'" Young v. Hobart West Grp., 385 N.J. Super. 448, 467 (App. Div. 2005) (second and third alterations in original) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).[6] "Only where the facts of the particular case are so 'unusually suggestive of retaliatory motive' may temporal proximity, on its own, support an inference of causation." Ibid. (quoting Krouse, 126 F.3d at 503). "Where the

---

[5] However, plaintiff, in her brief, implies that a six-week delay between J.I.'s report to HR and her actual termination lends suspicion to defendant's stated reason for her termination.

[6] Although Young was a suit brought under New Jersey's Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, our courts apply the same analytical framework to CEPA claims. Donofry v. Autotote Sys., Inc., 350 N.J. Super. 276, 290 (App. Div. 2001).

A-4373-17T3

timing alone is not 'unusually suggestive,' the plaintiff must set forth other evidence to establish the causal link." Ibid. (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000)).

However, despite a number of other complaints she made to defendant and outside agencies, which were investigated and addressed, albeit not always to plaintiff's satisfaction, plaintiff never suffered an adverse employment action prior to her termination. In fact, she continued to receive positive employment reviews after engaging in several whistle-blowing activities. We agree with the motion judge that plaintiff failed to demonstrate a causal relationship.

Nevertheless, we also consider whether plaintiff introduced sufficient evidence to demonstrate a genuine factual dispute as to whether the proffered reason for her termination was a pretext. In this regard, temporal proximity may serve to discredit defendant's explanation for termination. See, e.g., Parker v. Hahnemann Univ. Hosp., 234 F. Supp.2d 478, 493 (D.N.J. 2002) (noting temporal proximity is relevant to both issues).

Plaintiff argues the text message from M.P., an interview HR conducted with M.P. in January 2015, and her own post-termination statements demonstrate she did not violate company policy, and therefore, defendant's proffered reason was pretextual. However, to defeat summary judgment,

12

"plaintiff must show that the 'retaliatory discrimination was more likely than not a determinative factor in the decision.'" Donofry, 350 N.J. Super. at 293 (quoting Kolb, 320 N.J. Super. at 479).

Plaintiff conceded that she never showed M.P.'s text to her supervisor, HR or defendant's executive director. The document that recounts HR's conversation with M.P. in January does not, as plaintiff claims, demonstrate she was not a source of confidential information about other clients; it only demonstrates that M.P. said others, including J.I., disclosed personal information. Because the burden of demonstrating a genuine factual dispute about defendant's motive always remained with plaintiff, she needed to "do more than simply show that the employer's reason was false." Viscik v. Fowler Equip. Co., 173 N.J. 1, 14 (2002). She failed to do so.

We affirm the grant of summary judgment on plaintiff's CEPA claim.

III.

We agree with plaintiff that the exclusivity provision of N.J.S.A. 34:15-8, was not applicable to her claims for emotional distress, whether pled separately in the second count of her complaint or subsumed within the full array of damages available under CEPA. See N.J.S.A. 34:19-5 ("All remedies available in common law tort actions shall be available to prevailing [CEPA]

plaintiffs."). However, having concluded the judge properly granted defendant summary judgment on the CEPA claims, it follows that plaintiff's claims for emotional distress were properly dismissed. See Mehlman v. Mobil Oil Corp., 291 N.J. Super. 98, 139 (App. Div. 1996) (holding CEPA claim was inextricably linked factually to the plaintiff's other tort claims and subject to CEPA's waiver provision, N.J.S.A. 34:19-8), aff'd, 153 N.J. 163 (1998).

The balance of plaintiff's arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4373-17T3