THIS ORDER IS A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

December 29, 2023

Cancellation No. 92080470

*Paul Reed Smith Guitars and*
*The Estate of Theodore M. McCarty*

*v.*

*Gibson Brands, Inc.*

**ELIZABETH J. WINTER, INTERLOCUTORY ATTORNEY:**

This order discusses when it is appropriate to sever claims in a Board proceeding. Petitioners' motion (filed July 14, 2023) to sever Respondent's permissive counterclaim from this cancellation proceeding is fully briefed.[1]

Petitioners, Paul Reed Smith Guitars ("Petitioner PRS") and the Estate of Theodore M. McCarty ("Petitioner Estate"), seek to cancel trademark registration No. 6783631 for the mark THEODORE in standard characters for "stringed musical

---

[1] 17 TTABVUE. Citations to the record or briefs in this order are to the publicly available documents on the Trademark Trial and Appeal Board Inquiry System (TTABVUE), the Board's electronic docketing system. To allow the Board and readers to easily locate materials in the record, the parties should cite to facts or evidence in the proceeding record by referencing the TTABVUE entry and page number, e.g., "1 TTABVUE 2," and not attach previously-filed evidence to their briefs. *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) §§ 106.03, 801.01 and 801.03 (2023). All material filed under seal must be accompanied by a redacted version for public viewing. Trademark Rule 2.126(c). For material or testimony that has been designated confidential, cite the TTABVUE docket entry number and page for the redacted version.

instruments," owned by Respondent, Gibson Brands, Inc.[2] As grounds for cancellation, Petitioner PRS alleges a claim of likelihood of confusion under Trademark Act Section 2(d), 15 U.S.C. § 1052(d), and Petitioner Estate alleges a claim of false suggestion of a connection under Trademark Act Section 2(a), 15 U.S.C. § 1052(a).[3] In support of those claims, Petitioners rely, in part, on Petitioner PRS's trademark registration of the mark MCCARTY in typeset letters for "musical instruments, namely guitars,"[4] and allege, inter alia, that Theodore McCarty assigned to Petitioner PRS an exclusive license for use and registration of the name McCarty as a trademark and the right of publicity of his persona.

Although Respondent admits "its THEODORE guitar is based upon or inspired by Ted McCarty's original blueprints for a never-before-made guitar, which were found in Gibson's archives and dated 18 March 1957," and "its THEODORE guitar is named after Ted McCarty,"[5] Respondent otherwise denies the salient allegations set forth in the First Amended Petition for Cancellation. Additionally, Respondent includes in its Answer a permissive counterclaim[6] to cancel Petitioner PRS's unpleaded trademark

---

[2] U.S. Reg. No. 6783631, issued on July 5, 2022, claiming March 18, 2022, as the dates of first use and first use in commerce.

[3] Petitioners' First Amended Petition for Cancellation. 9 TTABVUE 2.

[4] U.S. Reg. No. 2490890, issued September 18, 2001, claiming January 21, 1994, as the dates of first use and first use in commerce. A mark depicted as a "typeset" drawing is the legal equivalent of a standard character mark. *See* Trademark Rule 2.52, 37 C.F.R. § 2.52; *In re Viterra, Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1909 n.2 (Fed. Cir. 2012); *In re Brack*, 114 USPQ2d 1338, 1339 n.2 (TTAB 2015).

[5] Answer ¶¶ 25-26, 15 TTABVUE 7.

[6] A counterclaim to cancel a registration owned, but not pleaded, by an adverse party is a permissive counterclaim. TBMP § 313.05. *See* Fed. R. Civ. P. 13(b), applicable to this

registration for the mark SILVER SKY NEBULA for "guitars,"[7] on the ground of likelihood of confusion. The permissive counterclaim alleges Respondent's prior use of its common law trademark SILVERBURST in connection with the "manufacture, distribution, promotion, advertising, and sale of musical instruments."[8] Respondent's affirmative defenses primarily constitute amplifications of its denial of Petitioners' claim of likelihood of confusion.[9]

## I. Petitioners' Motion to Sever Respondent's Permissive Counterclaim

Petitioners argue that severing Respondent's permissive counterclaim is appropriate because the marks and claims involved in the cancellation do not share common issues of fact or law with Respondent's counterclaim. Petitioners also assert that permitting the counterclaim to proceed in this case will not promote judicial

---

proceeding under Trademark Rule 2.116(a), 37 C.F.R. § 2.116(a). *Cf.* Trademark Rules 2.106(b)(3)(i) and 2.114(b)(3)(i), 37 C.F.R. §§ 2.106(b)(3)(i) and 2.114(b)(3)(i).

[7] U.S. Reg. No. 6423693, issued July 20, 2021, for the mark SILVER SKY NEBULA in standard characters for "guitars," claiming January 2020, as its date of first use and first use in commerce.

[8] Counterclaim ¶¶ 2-12, 15 TTABVUE 13-14.

[9] Respondent "reserves the right to rely on all affirmative defenses that become available or appear during discovery proceedings in this action …." "Affirmative Defenses" ¶ 6, 15 TTABVUE 12. This reservation is improper under the Federal Rules of Civil Procedure, because it does not give Petitioners fair notice of any specific defenses. *Philanthropist.com, Inc. v. Gen. Conf. Corp. of Seventh-Day Adventists*, 2021 USPQ2d 643, at *4 n.6 (TTAB 2021), *aff'd per curiam*, 2022 WL 3147202, No. 21-2208 (Fed. Cir. Aug. 8, 2022); *see also FDIC v. Mahajan*, 923 F. Supp. 2d 1133, 1141 (N.D. Ill. 2013) ("[A]ffirmative defenses that purport to reserve the right to add affirmative defenses at a later date … are stricken because they are improper reservations under the Federal Rules."). Accordingly, Respondent's putative defense in paragraph 6 is STRICKEN. *See* Fed. R. Civ. P. 12(f); Trademark Rule 2.116(a), 37 C.F.R. § 2.116(a). *See NSM Res. Corp. v. Microsoft Corp.*, 113 USPQ2d 1029, 1039 n.19 (TTAB 2014) (Board may *sua sponte* dismiss any insufficiently pleaded claim); *Musical Directions v. McHugh*, 104 USPQ2d 1157, 1160 (TTAB 2012) (the Board *sua sponte* reviewed opposer's pleading, determining that certain claims were insufficiently pleaded). Whether Respondent may, at some future point, amend its answer to include affirmative defenses must be resolved by way of a motion for leave to amend under Fed. R. Civ. P. 15(a).

efficiency and will inconvenience Petitioner Estate because it has no relationship whatsoever to the issues involved in the counterclaim. Moreover, Petitioners assert discovery concerning Respondent's alleged rights accrued at common law in the SILVERBURST mark will delay resolution of the case.[10]

## A. Legal Standard

Federal Rule of Civil Procedure 13(b) provides that a pleading may include as a permissive counterclaim "any claim that is not compulsory."[11] Fed. R. Civ. P. 13(b). On the other hand, Federal Rule of Civil Procedure 21 permits a court to "sever any claim against a party," including a counterclaim. Fed R. Civ. P. 21. Decisions whether to sever a claim under Rule 21 are committed to the Board's wide discretion. *See, e.g., Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th Cir. 2000) (a court is vested with "broad discretion ... to make a decision granting severance"); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000) ("It is within the district court's broad discretion whether to sever a claim under Rule 21."); *In re EMC Corp.*, 677 F.3d 1351, 102 USPQ2d 1539, 1545 ("The ... court enjoys considerable discretion in weighing the relevant factors.") (Fed. Cir. 2012); *Carrini Inc. v. Carla Carini S.R.L.*, 57 USPQ2d 1067, 1071 (TTAB 2000) ("[T]he Board possesses the inherent authority to control the disposition of cases on its docket."); *see also* 7 WRIGHT & MILLER, FED.

---

[10] 17 TTABVUE 3-5.

[11] A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and cannot be brought in a separate action. Fed. R. Civ. P. 13(a).

PRAC. & PROC. CIV. § 1689 (3d ed. April 2023 update) (questions of severance are addressed to the broad discretion of the district court).

As a preliminary matter, the Board notes the distinction between the severance of claims under Fed. R. Civ. P. 21 and the bifurcation of claims to be tried separately under Fed. R. Civ. P. 42 (b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."). Understanding the salient difference between the two rules is critical insofar as judgment in a severed action under Fed. R. Civ. P. 21 is final and appealable; whereas, the order entered at the conclusion of a separate trial under Fed. R. Civ. P. 42(b), which would not address the other separated issues or claims, "is often interlocutory because a final and appealable judgment cannot be rendered until all of the controlling issues have been tried and decided."[12] *Acevedo-Garcia*, 351 F.3d at 559 (internal citations omitted); *see also Gaffney*, 451 F.3d at 441. For example, the Board has bifurcated the issue of entitlement to a statutory cause of action into a separate phase under Fed. R. Civ. P. 42(b). *See AT&T Mobility LLC v. Thomann,* 2020 USPQ2d 53785, *3 (TTAB 2020);

---

[12] Notably, "[c]ourts often confuse [Rule 21 and Rule 42(b) and their] distinction … often is obscured in practice since at times the courts talk of 'separate trial' and 'severance' interchangeably." *See Acevedo–Garcia v. Monroig,* 351 F.3d 547, 559 (1st Cir. 2003) (internal citation omitted); *see also Gaffney v. Riverboat Servs. of Ind.*, 451 F.3d 424, 442 (7th Cir. 2006) ("By contrast [to Rule 21], bifurcation under [Fed. R. Civ. P.] 42(b) is appropriate where claims are factually interlinked, such that a separate trial may be appropriate, but final resolution of one claim affects the resolution of the other."); 9A WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2387 (3d ed., April 2023 update) (explaining that granting separate trials under Rule 42(b) and severing a claim under Rule 21 are not synonymous procedures, as "[s]eparate trials of claims originally sued upon together usually will result in the entry of one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently.").

*see also Rebecca Curtin v. United Trademark Holdings, Inc.*, 2023 USPQ2d 535, at \*1 (TTAB 2023).

Although Petitioners did not cite to Fed. R. Civ. P. 21, the Board construes Petitioners' motion as a motion to sever under this rule. *See Acevedo-Garcia,* 351 F.3d at 558 ("Severance refers to the process of dividing a case containing multiple claims into 'separate actions' and it is governed by Rule 21."). Pursuant to Fed. R. Civ. P. 21, applicable to this proceeding under Trademark Rule 2.116(a), 37 C.F.R. § 2.116(a), "[t]he [Board] may … sever any claim against a party."[13] Specifically, the Board "may sever claims under Rule 21, creating two separate proceedings, so long as … one claim [is] capable of resolution despite the outcome of the other claim." *Gaffney*, 451 F.3d at 442 (internal citations omitted); *see also Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, 330 F.R.D. 143, 147 (D.Del. 2019) (granted motion to sever counterclaims under the Lanham Act, Sherman Antitrust Act, Clayton Act and Delaware Deceptive Trade Practices Act under Rule 21).

Various circumstances may be considered in determining whether a claim should be severed. Rule 21 does not provide any standards for determining if claims should be severed; however, federal courts, including the Federal Circuit, consider the requirements of Fed. R. Civ. P. 20[14] for joinder when determining if claims should be

---

[13] The first two sentences of Fed. R. Civ. P. 21 relate to misjoinder and nonjoinder of parties: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party." To that extent, they do not apply here.

[14] Fed. R. Civ. P. 20 provides, in relevant part:

(a) Persons Who May Join or Be Joined.

(1) *Plaintiffs*. Persons may join in one action as plaintiffs if:

severed, i.e., whether the claims share questions of law or fact common to all defendants and arise out of the same transaction or occurrence. *See EMC Corp.*, 102 USPQ2d at 1542-44 (in considering severance under Rule 21, identified requirements under Rule 20 as they "help ensure that the scope of the action remains consistent with fairness to the parties") (citing *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966)); *Westinghouse*, 330 F.R.D. at 147.[15]

In addition to considering Rule 20's requirements, courts may also assess other circumstances such as whether the settlement of the claims or judicial economy would be facilitated, whether prejudice would be avoided if severance were granted, and whether different witnesses and documentary proof are required for the separate claims. *See, e.g., Otis Clap & Son,* 754 F.2d at 743 (Fed. R. Civ. P. 21 "gives the court discretion to sever any claim and proceed with it separately if doing so will increase judicial economy and avoid prejudice to the litigants") (citations omitted); *Ellis v.*

---

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
(B) any question of law or fact common to all plaintiffs will arise in the action. …

(b) Protective Measures. The court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party.

[15] "The transaction-or-occurrence test of Rule 20(a) is similar to the transaction-or-occurrence test of Rule 13(a) for compulsory counterclaims, which has been construed as requiring a 'logical relationship' between the claims." *EMC Corp.*, 102 USPQ2d at 1544. As the Federal Circuit explained in *EMC*, "several of [its] sister circuits" have adopted the "transaction or occurrence requirement under the provisions of Rule 20" to determine "when there is a logical relationship between the separate causes of action." 677 F.3d at 1358 (citing, *N.Y. Life Ins. Co. v. Deshotel,* 142 F.3d 873, 882 (5th Cir.1998) and *Coughlin v. Rogers,* 130 F.3d 1348, 1350 (9th Cir. 1997)).

*Evonk Corp.*, 604 F.Supp.3d 356, 377 (E.D.La. 2022); *Gonzalez v. Batmasian,* 320 F.R.D. 580, 581 (S.D.Fla. 2017); *Disparte v. Corp. Exec. Bd.*, 223 F.R.D. 7, 12 (D.D.C. 2004); *cf. EMC Corp.*, 102 USPQ2d at 1546 (noting that "courts can refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness" (quoting *Acevedo*, 600 F.3d at 521)).

In view of the foregoing, the following circumstances may be relevant in Board proceedings to determine whether a permissive counterclaim should be severed under Fed. R. Civ. P. 21:

- whether the claims and/or permissive counterclaims at issue arise out of the same transaction, occurrence, or series of transactions or occurrences;

- whether the claims present some common questions of law or fact;

- whether judicial economy and efficiency would be facilitated or harmed by severance; or

- whether prejudice would occur if severance were granted or denied.

*See Westinghouse Air Brake Tech.*, 330 F.R.D. at 149 (noting that "[b]ecause both Rule 20 factors are not satisfied, the Court could end its analysis, with the result that the Motion [to Sever] would be granted. But for sake of completeness, the Court will also analyze the other factors … that sometimes come into play when a district court analyzes a Rule 21 motion."). Accordingly, the Board discusses these considerations below.

**B. Analysis**

**1. Whether the claims and permissive counterclaim arise out of the same transaction, occurrence or series of transactions or occurrences; and whether the claims and permissive counterclaim share common questions of law and fact**

In this case, the marks involved in the permissive counterclaim, SILVERBURST and SILVER SKY NEBULA, are completely dissimilar from the marks involved in Petitioners' claims, i.e., THEODORE and MCCARTY. On the other hand, as Respondent points out, Petitioner PRS and Respondent are both involved in Petitioners' claims and the permissive counterclaim, and all parties' claims involve "stringed musical instruments," "guitars," or the alleged "manufacture, distribution, promotion, advertising, and sale of musical instruments." Respondent also asserts that Petitioners' claims and its permissive counterclaim are not significantly different because discovery, evidence and witnesses in both proceedings will overlap.[16]

The Board agrees with Petitioners that their claims and the permissive counterclaim do not arise out of the same transaction, occurrence, or series of transactions or occurrences or share questions of law or fact. Simply put, the fact that the claims in the cancellation and the permissive counterclaim share superficial similarity (i.e., both Petitioner PRS and Respondent, and musical instruments are involved) does not obviate other realities: the claim of false suggestion of a connection

---

[16] 19 TTABVUE 5. To the extent Respondent contends Petitioners' claims are "not about false association but only [whether there is] likelihood of confusion between Registrant's THEODORE mark and Petitioner PRS's MCCARTY mark," 19 TTABVUE 4, said argument is not well-taken insofar as the Board previously denied Respondent's motion to dismiss Petitioner Estate's Section 2(a) claim, 8 TTABVUE 10, and denied Respondent's motion to dismiss Petitioner PRS' Section 2(d) claim. 14 TTABVUE 13.

under Trademark Act Section 2(a) in the cancellation involves another party, i.e., Petitioner Estate; different factual issues are raised by Petitioner Estate's Section 2(a) claim, such as whether Respondent's registered mark creates a false suggestion of a connection with Theodore McCarty, *see* 8 TTABVUE 10; factual issues exist pertaining to Petitioner PRS' Section 2(d) claim regarding the alleged licensing agreement between Petitioners; and the marks involved are entirely different. Contrary to Respondent's contention, "Rule 20 makes clear that the existence of a single common question of law or fact alone is insufficient to satisfy the transaction-or-occurrence requirement." *EMC Corp.*, 102 USPQ2d at 1543. Therefore, Respondent's stated intention to take discovery regarding Petitioner PRS's sales and royalties paid to Petitioner Estate for both Petitioners' claims and the permissive counterclaim is insufficient to demonstrate that Petitioners' claims and the permissive counterclaim arise out of the same transaction, occurrence, or series of transactions or occurrences, or have questions of law or fact in common. At a minimum, because Respondent, as counterclaim-plaintiff, relies solely on rights assertedly accrued at common law in the mark SILVERBURST, resolution of the issue of priority in connection with its likelihood of confusion claim will require different discovery and evidence than is required for Petitioners' claims, which involve Petitioner Estate's rights and the alleged exclusive licensing agreement with Petitioner PRS.

Moreover, to the extent Respondent posits that discovery regarding Petitioners' claims will include the years when Theodore McCarty was Respondent's president,

i.e., from 1950-1966, "and the years going forward and should encompass the counterclaim,"[17] such assertions are not only indefinite and speculative, but suggest discovery for a lengthy time period that is unlikely to be proportional to this proceeding.[18]

## 2. Whether judicial economy and efficiency would be facilitated or harmed

To determine whether severing the counterclaim from the cancellation would improve or reduce judicial economy and efficiency, that is, for example, effectuate an inefficient use of the Board's limited resources, increase the cost of litigation, or delay the resolution of this case, the Board must consider whether the involved claims and counterclaim will encompass like issues, discovery, evidence and witnesses. *See, e.g., Westinghouse Air Brake Tech.*, 330 F.R.D. at 149-50 (motion to sever granted, finding that "disentangling" patent infringement allegations from amended antitrust counterclaim which "holds the potential for enormously costly and time-consuming discovery," will aid overall judicial economy); *Lindora, LLC v. Isagenix Int'l, LLC,* 198 F.Supp.3d 1127, 1150 (S.D.Cal. 2016) (denying severance, noting "overlap in issues, and the likely overlap in witnesses and evidence …, [therefore,] conducting two separate trials would involve significant duplication of effort, producing inefficiencies

---

[17] 19 TTABVUE 5.

[18] Notably, the parties' respective alleged priority dates are well after "1950-1966." Specifically, Respondent alleges use of the mark SILVERBURST since at least as early as 1978, Counterclaim ¶ 2, 15 TTABVUE 13; Petitioner PRS alleges use of the mark MCCARTY in connection with guitars since January 21, 1994 (see note 3 supra); and Petitioner PRS's alleged date of first use of the mark SILVER SKY NEBULA for guitars is January 2020 (see note 7 supra).

rather than economization."); *cf. Topco Holdings, Inc. v. Hand 2 Hand Indus., LLC,* 2022 USPQ2d 54, at \*7-8 (Board allowed proposed amendment to pleading that alleged ownership of recently-filed trademark applications and common law rights accrued in previously-pleaded marks for goods encompassed by previously-pleaded goods, concluding that the interests of justice and judicial economy would be served by permitting all claims between the parties to be adjudicated) (citing *Space Base Inc. v. Stadis Corp.,* 17 USPQ2d 1216, 1217 n.1 (TTAB 1990)).

Granting Petitioners' motion to sever would enhance judicial economy and efficiency. Because the cancellation claims and the permissive counterclaim do not arise out of the same series of transactions or occurrences and involve few, if any, common questions of law and fact, severing adjudication of the counterclaim from the cancellation will not result in duplication of the parties' efforts. Further, given the differences in the factual and legal issues involved due to the different marks and claims, severing the counterclaim from the cancellation will enable the parties to focus their discovery requests, minimize discovery disputes, and avoid an unnecessarily complex single proceeding. Moreover, if the cancellation claims and the permissive counterclaim are not severed, issuance of a final decision may be delayed because the Board will be required to expend additional time distinguishing between unrelated claims, facts, and evidence. *Cf. UMG Recordings Inc. v. Mattel Inc.,* 100 USPQ2d 1868, 1873 (TTAB 2011) (overly large records tax the resources of the Board).

### 3. Whether severance would cause prejudice

Respondent's alleged convenience in addressing the cancellation claims and the permissive counterclaim in a single proceeding is an insufficient basis to deny Petitioners' motion to sever. *Cf. World Hockey Assoc. v. Tudor Metal Prods. Corp.*, 185 USPQ 246, 248 (TTAB 1975) (consolidation should be equally advantageous to both parties to the proceedings with respect to the duplication of effort and the savings of time and expense). Contrary to Respondent's contention, Petitioner Estate will be prejudiced by the inclusion of the permissive counterclaim in the main cancellation because Petitioner Estate is not involved in the permissive counterclaim and resolution of its claim under Trademark Section 2(a) will be delayed by discovery related to Respondent's alleged use of the mark SILVERBURST.

Accordingly, Petitioners' motion to sever Respondent's permissive counterclaim from the cancellation is **GRANTED**. In view thereof, Respondent's counterclaim is hereby **SEVERED** from the cancellation pursuant to Fed. R. Civ. P. 21; Cancellation No. 92080470 shall resume and continue apace; and in a separate order, a new cancellation proceeding shall be instituted (with a new proceeding number) for Respondent's counterclaim seeking to cancel U.S. Reg. No. 6423693.[19]

## II. Proceeding Resumed; Trial Dates Reset

This proceeding is resumed. Trial dates are reset as shown in the following schedule:

---

[19] Because Respondent has paid the fee for the counterclaim, no additional filing fees will be required.

| | |
|---|---|
| **Deadline for Discovery Conference** | **1/31/2024** |
| **Discovery Opens** | **1/31/2024** |
| **Initial Disclosures Due** | **3/1/2024** |
| **Expert Disclosures Due** | **6/29/2024** |
| **Discovery Closes** | **7/29/2024** |
| **Plaintiff's Pretrial Disclosures Due** | **9/12/2024** |
| **Plaintiff's 30-day Trial Period Ends** | **10/27/2024** |
| **Defendant's Pretrial Disclosures Due** | **11/11/2024** |
| **Defendant's 30-day Trial Period Ends** | **12/26/2024** |
| **Plaintiff's Rebuttal Disclosures Due** | **1/10/2025** |
| **Plaintiff's 15-day Rebuttal Period Ends** | **2/9/2025** |
| **Plaintiff's Opening Brief Due** | **4/10/2025** |
| **Defendant's Brief Due** | **5/10/2025** |
| **Plaintiff's Reply Brief Due** | **5/25/2025** |
| **Request for Oral Hearing (optional) Due** | **6/4/2025** |

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125. These include pretrial disclosures, the manner and timing of taking testimony, matters in evidence, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be

submitted in accordance with Trademark Rules 2.128(a) and (b). Such briefs should utilize citations to the TTABVUE record created during trial, to facilitate the Board's review of the evidence at final hearing. *See* TBMP § 801.03. Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a).